OPINION
{¶ 1} In this accelerated appeal, submitted on the record and the briefs of the parties, plaintiff-appellant, Melody Salisbury, appeals the judgment of the Portage County Court of Common Pleas, Domestic Relations Division, granting defendant-appellee, Gerald Brooks Salisbury's, Motion for Reallocation of Parental Rights. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} Gerald and Melody were married on March 28, 1999, in Kent, Ohio. Two children, Arturo Donald Salisbury, d.o.b. June 5, 1999, and Melina Olivia Salisbury, d.o.b. June 15, 2001, were born as issue of the marriage.
 {¶ 3} On November 7, 2003, Melody filed for divorce from Gerald, asserting various grounds in her complaint. Melody's complaint also requested legal custody of Arturo and Melody and an order for child support. On November 19, 2003, Gerald filed his answer and counterclaim, admitting that the parties were incompatible. At the time his answer was filed, Gerald did not contest Melody's request for custody of the children.
 {¶ 4} On December 23, 2003, the trial court issued an order naming Melody temporary residential parent, and ordered Gerald to pay child support in the amount of $486.34 per month for both children. This order also granted Gerald temporary parenting time, in accordance with the court's standard order of visitation.
 {¶ 5} On February 25, 2004, Gerald filed a motion to appoint a guardian ad litem, which the trial court granted on the same day. On April 2, 2004, Gerald submitted a proposed shared parenting plan with the court.
 {¶ 6} On May 5, 2004, the trial court conducted a hearing on the divorce. At the hearing, both Melody and Gerald testified, as well as Melody's mother, Milagros Cacho, and Jennifer Bakker, a friend of Melody's, with whom Melody lived after filing for divorce the previous November.
 {¶ 7} The evidence and testimony adduced at the hearing indicated that both parties agreed that they were incompatible, but they could not agree on a resolution of parental rights and responsibilities. Melody sought primary custody of the children, and did not approve of the shared parenting agreement which Gerald had proposed.
 {¶ 8} Melody's testimony at the divorce hearing revealed her interest in relocating to Houston, Texas, and moving in with her parents. Melody explained that she wished to move to Houston "to get a better job" and "to afford [her] kids more things," and stated that she had worked out arrangements with her parents to do so. Melody contended that a move to Houston would also provide her with the support system which she lacked in Ohio, since her parents and siblings lived in Texas.
 {¶ 9} For his part, Gerald sought shared legal custody and parenting time, in accordance with the proposed shared parenting agreement he submitted to the court or, in the alternative, he be awarded primary custody of the children, if Melody decided to move to Texas.
 {¶ 10} Evidence and testimony from the divorce hearing revealed that during the pendency of the divorce proceedings, the parties informally altered the standard visitation plan ordered by the court, which resulted in Gerald and Melody spending approximately an equal amount of time with the children. The remainder of the children's time was spent with their day care provider, Linda Vanderpool, who provided care for Arturo and Melina since shortly after each was born. Evidence adduced at the hearing also indicated that Melody and Gerald both had family in the area, with whom the children had developed and maintained relationships.
 {¶ 11} At the close of the hearing, the trial court addressed the parties as follows:
 {¶ 12} "I haven't read the whole shared parenting plan, so I'm not ready at this point to say that I'm going to adopt that, but I'm ready to say this, that you've acknowledged, Melody, that taking the children or removing * * * either one of you, * * * dad or mom, from their lives would have a significant impact on them and I agree that it would. And the only reason you've given the court for wanting to go to Texas is that you want to be a better mother and it seems to me that being a better mother is something you do. You can do that anywhere.
 {¶ 13} "* * *
 {¶ 14} "You would like to get a better job. Maybe there are better jobs there. There might be better jobs here. I have no indication that you've looked for a better job here.
 {¶ 15} "I don't see any reason, frankly, to disrupt this family for relatively minor reasons. But, that's up to you. I mean, this is a free country and it's a mobile society and if you want to go you can go. But, I don't think you should take the children with you.
 {¶ 16} "And I can't adopt at this point the shared parenting plan because I haven't read it, but what I would like is to have you look at it, which you have in part, and see if you would like to propose one. And if we can agree on a shared parenting plan, well, that's what we'll put on. Otherwise, I will probably make him residential parent.
 {¶ 17} "And everything else you've taken care of so — I hope you understand why I'm doing this. I'm not trying to stop you from living your life, but I'm trying to think of what's best for the kids and there's no * * * substantial reason for you to disrupt that at this point. I mean [your mother] comes up and visits and you've got mom and dad's relatives up here and they see [the children], so they still maintain a relationship with grandma, and I just think it would be more difficult to do that down there.
 {¶ 18} "Work on that shared parenting plan and look around here, maybe you will find a job that you like."
 {¶ 19} Several months passed, and the parties still failed to reach an agreement as to custody and shared parenting. On August 12, 2004, Gerald submitted a second Motion for a Shared Parenting Plan. The motion requested that the court grant an order designating Gerald as the residential parent for school purposes, so that Arturo could be enrolled in kindergarten in the Kent City School District. The motion also requested that Gerald be designated the residential parent, if the parties could not agree to terms regarding shared parenting. The motion stated that the parties were continuing to negotiate shared parenting rights and responsibilities, but had not been able to reach an agreement as of the date of the motion. On August 17, 2004, the trial court ordered that Gerald be designated residential parent for school purposes.
 {¶ 20} On August 26, 2004, Gerald filed a "Motion to Finalize the Decree of Divorce with Shared Parenting," alleging that "despite the Court's order naming Defendant-Father as the residential parent for school purposes, Plaintiff-Mother is attempting to register the child in another school district." The motion requested a hearing on the matter.
 {¶ 21} On September 2, 2004, Melody filed a joint Motion to Vacate and Motion to Strike. Melody's argument in support of vacating the court's August 17, 2004 order designating Gerald as residential parent for school purposes, was based on the court's failure to provide Melody "notice and hearing on the matter," and that the order was "based upon a second shared parenting plan * * * not filed in accordance with [R.C. 3109.04]".
 {¶ 22} Melody based her motion to strike the second proposed shared parenting upon allegations that the second plan was not properly filed, and was "completely different than the originalshared parenting plan properly before the court, filed on April 2, 2004." (Emphasis added).
 {¶ 23} On September 7, 2004, the court held a hearing on the parties' respective motions. At the hearing, there was a disagreement between the parties related to the issue of whether the trial court's August 17, 2004 order changed the designation of the residential parent, and some misunderstanding on the part of Melody's counsel as to what the court's prior order meant. The court reiterated, on the record, as follows:
 {¶ 24} "I had not intended to change the residential parent from mother to husband unless she went to Texas because I did not see sufficient reason for her to go as far as need. She's personally free to go, but not take the child[ren], and then you would have to work out something there. But, if she stayed, I intended for her to continue to be the residential parent of the child[ren]."
 {¶ 25} The record reveals that, on two separate occasions during this hearing, Melody represented to the court that she had no intention of leaving Ohio.
 {¶ 26} With respect to the issues of shared parenting and Arturo's schooling, the court stated as follows:
 {¶ 27} "I still think there should be a shared parenting plan. You're not so far apart you can't have a shared parenting plan. It's not like you're living in Cincinnati and Cleveland. You ought to have a shared parenting plan.
 {¶ 28} "I don't remember the school [issue], but * * * I can look at the record, but if I said if we didn't have shared parenting, I would make him the residential parent for school purposes, well, I probably said that. But, I did not intend to change the residential parenting, only if she left the state. I mean, I thought I was clear on that, that if she moved, then he would be the residential parent and could keep the child[ren] here. She didn't move. She didn't move out of the state."
 {¶ 29} Later, after argument between the parties' counsel, it was agreed that the parties would keep Arturo in school in Kent, Ohio, and that the court would review the order after the end of the semester, if the arrangement did not work out.
 {¶ 30} The court ordered Melody's counsel to make the entry. In an attempt to clarify the entry for the school issue, counsel engaged in the following discussion with the court:
 {¶ 31} "Mr. Muldowney: So you're saying that she's the residential parent and the child's gonna live with her?
 {¶ 32} "The Court: I think at the time you were probably all in the same school area or something.
 {¶ 33} "Mr. Muldowney: Right.
 {¶ 34} "The Court: So I made him the residential parent for school purposes. She moved. Well, it's all right, she's allowed to move, it's not outside the state. But, she says she can handle it for a while, see how it goes.
 {¶ 35} "Mr. Muldowney: But I'm really confused, Judge.
 {¶ 36} "The Court: How do I make this clear? You are the residential parent. You are going to take the child to Kent to school and pick him up.
 {¶ 37} "Mr. Muldowney: Okay.
 {¶ 38} "The Court: It's that simple. At the end of a few months, if it's not going well and it's a problem, we'll review it.
 {¶ 39} "Mr. Muldowney: Okay.
 {¶ 40} "* * *
 {¶ 41} "Mr. Muldowney: You want me to prepare the entry?
 {¶ 42} "The Court: Yes.
 {¶ 43} "* * *
 {¶ 44} "The Court: I would like to get the final entry on.
 {¶ 45} "* * *
 {¶ 46} "The Court: Then you can do — you will be divorced, which you're not now.
 {¶ 47} On September 30, 2004, the court journalized the judgment entry of divorce, which was prepared by Melody's counsel.
 {¶ 48} In the court's findings, the divorce decree stated, in relevant part, that "Melody Salisbury shall be designated the sole legal custodian and residential parent of the minor child(ren). The Court finds this is in the best interest of the child(ren). The court finds Defendant enrolled the minor child Arturo in kindergarten within the Kent City School District. The Court finds, at this time, it would be less disruptive for the child to remain in kindergarten within the Kent City School District, and Orders Plaintiff to pick the child up after school. The Court will review this matter after the end of this semester, December 2004."
 {¶ 49} The decree also ordered that, subject to further order of the court, Gerald was to pay Melody child support in the amount of $496.07 per month, covering both children. Furthermore, it ordered "that a residential parent, who intends to move from the residence specified in any visitation order shall immediately file with the undersigned judge a notice of intent to relocate. The notice shall specify the time and place of relocation. The residential party may seek, by motion, an order pursuant to R.C.3109.051(G) that the other parent not be provided a copy of such notice." The court contemporaneously vacated its August 17, 2004 order naming Gerald residential parent for school purposes.
 {¶ 50} On October 28, 2004, Gerald filed a Motion for a New Trial, alleging that there was new evidence relevant to the court's determination of custody. A hearing on this motion was scheduled for December 6, 2004. Melody filed a Motion to Continue, stating that she could not attend the hearing because of work demands, which was granted.
 {¶ 51} On December 30, 2004, the court granted Gerald's Motion for a New Trial. In the judgment entry granting Gerald's Motion for New Trial, the court made the following orders:
 {¶ 52} "1. Wife is to be named residential parent of the minor children for school purposes.
 {¶ 53} "2. The court finds that the parties, after several requests from the court, are unable to agree on a Shared Parenting Plan. Accordingly, no Shared Parenting Plan is adopted by the Court.
 {¶ 54} "3. The court does find that a visitation schedule in excess of the so-called "Standard Order" is appropriate * * *. In addition to the Court's Standard Order, * * * Father shall have the parties' minor children on Mondays and Wednesdays, from 9:00 a.m. to 9:00 a.m. the following morning. Father shall be responsible for transporting the children to and from school and/or daycare on his extended visitation days.
 {¶ 55} "4. Mother shall not remove the children permanently from the State of Ohio without the express, written permission of this court."
 {¶ 56} On January 6, 2005, Melody filed, with the court, a Notice of Intent to Relocate with the trial court, and moved the children, without notifying Gerald, to Houston, Texas to live with her relatives, on January 14, 2005.
 {¶ 57} On January 18, 2005, Gerald filed a Motion to Show Cause, alleging that Melody was in willful contempt of the court's order prohibiting her from permanently removing the children from the State of Ohio, contrary to the court's order. On the same date, Gerald filed a Motion for Relief from Judgment, on the grounds "that Plaintiff was awarded custody on the basis of fraud."
 {¶ 58} On January 28, 2005, Melody filed a notice of appeal with this court, challenging the trial court's grant of Gerald's Motion for New Trial.
 {¶ 59} On February 4, 2005, Gerald filed with the trial court a Motion to Modify Allocation of Parental Rights and Responsibilities, based upon Melody's removal of the children from Ohio to Houston, Texas in violation of the court's order. Gerald requested that the children be returned to the State of Ohio, and that he be granted immediate custody, "so the children are returned to their home and school."
 {¶ 60} On February 14, 2005, the trial court, on its own motion, issued a nunc pro tunc judgment entry "to modify this Court's order of December 30, 2004 and this Court's Order of September 30, 2004." The entry stated as follows:
 {¶ 61} "At the Time of Trial, this Court announced, in open Court, that in the event Plaintiff was awarded custody of the parties' children, then this Court would require Plaintiff to obtain express written permission from this court before permanently removing the children from the State of Ohio. This provision, however, was inadvertenly omitted when this court issued its Judgment Entry — Decree of Divorce dated September 30, 2004.
 {¶ 62} "The Court attempted to rectify that omission by issuing a Judgment Entry dated December 30, 2004. The Court has concluded that the Order of December 30, 2004 did not fully and correctly modify the omissions of the Decree of September 30, 2004. Accordingly, it is therefore the order of this Court that the Judgment Entry of December 30, 2004 is hereby vacated forthwith and Plaintiff's Motion granting a New Trial is hereby vacated.
 {¶ 63} "Under the inherent power of this Court to correct its orders to conform with the evidence and its announced decisions at the time of Trial, the Court hereby orders nunc pro tunc as follows:
 {¶ 64} "1. Wife is to be named residential parent of the minor children for school purposes.
 {¶ 65} "2. The Court finds that the parties, after several requests from the Court, are unable to agree a Shared Parenting Plan. Accordingly, no Shared Parenting Plan is adopted by the Court.
 {¶ 66} "3. The court does find that a visitation schedule in excess of the so-called "Standard Order" is appropriate * * *. In addition to the Court's Standard Order, * * * Father shall have the parties' minor children on Mondays and Wednesdays, from 9:00 a.m. to 9:00 a.m. the following morning. Father shall be responsible for transporting the children to and from school and/or daycare on his extended visitation days.
 {¶ 67} "4. Mother shall not remove the children permanently from the State of Ohio without the express, written permission of this court."
 {¶ 68} On March 3, 2005, the trial court entered an order granting a continuance for the hearing on Gerald's Motion to Change Custody and Motion to Show Cause. While Melody's attorney was present at the hearing, he had informed Melody that it was not necessary for her to attend. The trial court rescheduled the hearing for April 1, 2005. This order further required that Melody make the children available for visitation with Gerald over the Spring Break vacation at her own expense.
 {¶ 69} On March 11, 2005, Gerald filed a notice of appeal with this court, appealing the trial court's nunc pro tunc judgment entry. This appeal was subsequently dismissed, sua sponte, for failure to prosecute.
 {¶ 70} On March 30, 2005, Melody filed an Objection/Motion to Dismiss Gerald's Motion to Modify and Reallocate Parental Rights and Responsibilities, arguing that the issues relative to the December 30, 2004 entry and the February 14, 2005 entry were presently on appeal. Furthermore, Melody alleged that these entries were made without notice to either party or a hearing, and for these reasons the Motion for Reallocation should be dismissed and refiled, in relation to the September 30, 2004 judgment entry of divorce, in order to be properly before the court.
 {¶ 71} On April 1, 2005, the trial court entered judgment, following a hearing, on Gerald's Motion to Show Cause, filed on January 18, 2005. Both parties appeared before the court, and mutually stipulated that Gerald was denied his visitation rights from January 14 to January 16, 2005, in violation of the court's September 30, 2004 order. The court allowed Melody the opportunity to purge herself of the judgment of contempt by granting Gerald visitation as outlined in the divorce decree, or by agreeing to alternative visitation arrangements, if approved and filed with the court. The court reserved ruling on "all other aspects" of Gerald's motion of January 18, 2005, until after trial transcripts could be prepared and provided. This ruling was necessitated by the retirement of the judge who had previously presided over the matter.
 {¶ 72} On April 7, 2005, Gerald filed a second Motion to Show Cause, based upon Melody's refusal to return the children to the State of Ohio and her continued denial of his rights to visitation. On April 26, 2005, Melody filed a Motion for Continuance related to Gerald's second Motion to Show Cause. The matter was continued until June 6, 2005. On May 10, 2005, the trial court entered an order "based upon the history of this case" that no further continuances would be granted.
 {¶ 73} All parties appeared for the hearing on June 6, 2005. Based upon a procedural defect asserted by Gerald's counsel, the court overruled Gerald's second Motion to Show Cause and Motion to Reallocate Parental Rights and Responsibilities, and ordered that these motions be refiled. Gerald refiled his Motion to Reallocate Parental Rights and Responsibilities the following day, alleging a substantial change in circumstances requiring a reallocation.
 {¶ 74} On June 22, 2005, pursuant to Sup.R. 4, the retired judge who had presided over the matter from its inception was reassigned to hear the matter.
 {¶ 75} On July 27, 2005, Melody filed a "Motion for Modification of Prior Decree and Reallocation of Parental Rights and Responsibilities; Change of Custody," in which she also alleged a substantial change in circumstances with respect to herself and the children, and asserting that modification was necessary to serve the best interest of the children.
 {¶ 76} On August 17, 2005, the matter proceeded to a hearing. Following the hearing, the trial court granted Gerald's Motion for Reallocation of Parental Rights and Responsibilities, and designated him as residential parent and legal custodian of the children.
 {¶ 77} Melody timely appealed the judgment granting Gerald's Motion for Reallocation of Parental Rights with this court. This court sua sponte consolidated this appeal with Melody's prior appeal on February 22, 2005.
 {¶ 78} Appellant assigns the following as error:
 {¶ 79} "[1.] The trial court abused its discretion in granting a new trial on its own initiative filing a Nunc Pro Tunc subsequently and violated procedural due process wherein no notice or hearing was afforded the parties and substantive rights of Appellant were adversely imposed.
 {¶ 80} "[2.] The trial court's awarding a change in custody of the minor children of the parties to the Defendant/Appellee was an abuse of discretion, as there was not found a change in circumstances to warrant reallocation.
 {¶ 81} "[3] The trial court's awarding a change in custody of the minor children of the parties to the Defendant/Appellee was not in the best interests of the minor children."
 {¶ 82} The unusual procedural posture of this appeal must be addressed.
 {¶ 83} On September 30, 2004, the court entered the "Decree of Divorce," making Melody the "residential parent of the minor children," but ordering that Arturo "remain in kindergarten within the Kent City School District," where his father lived, and provided that "[t]he court would review this matter at the end of this semester."
 {¶ 84} On December 30, 2004, the trial court granted appellee's Motion for a New Trial. Rather than setting the matter for rehearing, the trial court used this entry to make several custody-related orders, including a directive that appellant "shall not remove the children permanently from the State of Ohio without the express, written permission of this court."
 {¶ 85} On January 6, 2005, appellant moved the children to Houston, Texas. Appellant did not have permission from the trial court for that relocation, but appellant did file a Notice of Intent to Relocate the children with the court.
 {¶ 86} On January 28, 2005, appellant filed a notice of appeal with this court, challenging the trial court's December 30, 2004 rulings. This notice of appeal was premature, since it was not predicated on an order that was both final and appealable.[1]
 {¶ 87} On February 14, 2005, the trial court, on its own motion, issued a nunc pro tunc judgment entry vacating its December 30, 2004 order and modifying the omissions of the decree of September 30, 2004.[2]
 {¶ 88} Since Melody's second and third assignments of error are dispositive of this appeal, they will be addressed first. In her second assignment of error, Melody maintains that the trial court erred and abused its discretion in awarding a change of custody to Gerald, since Gerald, as the non-custodial parent, failed to meet his evidentiary burden to show that Melody's move to Texas with the children constituted a change in circumstances which outweighed the harm caused by changing the children's environment. In her third assignment of error, Melody argues that the trial court erred and abused its discretion by modifying its decree allocating parental rights and responsibilities without first finding that there had been a change in circumstances and then determining whether the modification was in the best interest of the children. Gerald argues that the burden to demonstrate a change in circumstances lies on Melody, since she willfully violated a court order preventing her from moving the children without the express permission of the court.
 {¶ 89} Decisions of a trial court involving the care and custody of children are accorded great deference upon review.Miller v. Miller (1988), 37 Ohio St.3d 71, 74. Thus, any judgment of the trial court involving the allocation of parental rights and responsibilities will not be disturbed absent a showing of an abuse of that court's discretion. Davis v.Flickinger, 77 Ohio St.3d 415, 418, 1997-Ohio-260. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219 (citations omitted). The highly deferential abuse of discretion standard is particularly appropriate in child custody cases, since the trial judge is in the best position to determine the credibility of the witnesses and there "may be much that is evident in the parties' demeanor and attitude that does not translate well to the record." Wyatt v. Wyatt, 11th Dist. No. 2004-P-0045, 2005-Ohio-2365, at ¶ 13 (citation omitted). In so doing, a reviewing court is not to weigh the evidence "but must ascertain from the record whether there is some competent evidence to sustain the findings of the trial court." Clyborn v.Clyborn (1994), 93 Ohio App.3d 192, 196.
 {¶ 90} As a general rule, a "trial court may not modify its prior decree allocating parental rights and responsibilitiesunless it first finds a change has occurred in the circumstances of the child or his residential parent; and then, upon further inquiry, the court finds that the modification is in the child's best interests." Lehman v. Lehman (Feb. 28, 1997), 11th Dist. No. 95-T-5327, 1997 Ohio App. LEXIS 716, at *8 (emphasis sic), citing Clyborn, 93 Ohio App.3d at 195; R.C.3109.04(E)(1). The court should proceed to a best interest analysis only after the court has determined that a change in circumstances has occurred. Id. (citation omitted). The initial change in circumstances determination is meant to serve as a "barrier that must be hurdled before inquiry can be made" into the best interests of the child. Perz v. Perz (1993),85 Ohio App.3d 374, 376. The change in circumstances of the child or the residential parent must be based upon facts arising since the prior decree or from facts unknown at the time of the prior decree. Moyer v. Moyer (Sep. 24, 1992), 10th Dist. No. 92AP-27, 1992 Ohio App. LEXIS 4897, at *5-*6. This barrier is meant to operate as the "domestic relations version of the doctrine ofres judicata," and is meant to prevent the constant relitigation of the same issues adjudicated in the prior custody order. Perz, 85 Ohio App.3d at 376. The change in circumstances must be significant to the question of custody before a best interest inquiry is performed. Id. Before modifying a prior custody decree, a court must additionally find that the harm likely to be caused by a modification of the custody plan is outweighed by the advantages of the change. Rohrbaugh v.Rohrbaugh (2000), 136 Ohio App.3d 599, 603-604, citing R.C.3109.04(E)(1)(a)(iii).
 {¶ 91} In sum, a change in custody analysis normally creates a rebuttable presumption in favor of the custodial parent retaining custody unless the change is one which would have a "material and adverse effect upon the child." Elam v. Elam
(Dec. 10, 2001), 12th Dist. No. CA2001-02-028, 2001 Ohio App. LEXIS 5472, at *4-*5 (citation omitted); Rohrbaugh,136 Ohio App.3d at 604-605; R.C. 3109.04(E)(1)(a)(iii). Therefore, it necessarily follows that the burden is on the party seeking a change in custody to demonstrate sufficient indicia of these three factors to rebut this presumption and justify a modification. Wyss v. Wyss (1982), 3 Ohio App.3d 412, 414;Serwicki v. Serwicki (May 22, 1987), 6th Dist. No. L-86-200, 1987 Ohio App. LEXIS 7074, at *5.
 {¶ 92} It is well-settled that a relocation of a residential parent to another state does not, in and of itself, qualify as a change in circumstances. Vincenzo v. Vincenzo (11th Dist. 1982), 2 Ohio App.3d 307, 308-309; Schiavone v. Antonelli (Dec. 10, 1993), 11th Dist. No. 92-T-4794, 1993 Ohio App. LEXIS 5891, at *9; Gydosh v. Vice, 8th Dist. No. 80176, 2002-Ohio-1388, 2002 Ohio App. LEXIS 1404, at *10; see also Clontz v. Clontz
(Mar. 9, 1992), 12th Dist. No. CA91-02-027, 1992 Ohio App. LEXIS 1034, at *5 (a trial court abuses its discretion in finding a change in circumstances based solely on the fact of a residential parent moving out of state).
 {¶ 93} However, the analysis changes when the divorce decree expressly or impliedly prohibits the custodial parent's ability to remove the child from the jurisdiction. In such cases, the burden then shifts to the custodial parent to demonstrate that the decree should be modified to permit the child's removal.Hauck v. Hauck (Mar. 31, 1983), 8th Dist. No. 44908, 1983 Ohio App. LEXIS 14490, at *4 (citation omitted); Valentyne v.Ceccacci, 8th Dist. No. 83725, 2004-Ohio-4240, at ¶ 53;Johnson-Wooldridge v. Wooldridge (Jul. 26, 2001), 10th Dist. No. 00AP-1073, 2001 Ohio App. LEXIS 3319, at *15. In such situations, the court has the option of enjoining the custodial parent from removing the child, pursuant to the decree's terms, changing custody to that of the parent residing in the state, or modifying the decree to permit removal of the children. Hauck,
1983 Ohio App. LEXIS 14490, at *4 (citations omitted). Where the decree contains an express or implied provision restricting the custodial parent's ability to move from the area, the child can only be moved from the state upon a finding that the relocation would be in the best interests of the child. Schiavone,
1993 Ohio App. LEXIS 5891, at *10 n. 2.
 {¶ 94} At the hearing held September 7, 2004, prior to the entry of the final divorce decree, the court indicated that since no shared parenting agreement had been adopted, it was going to retain Melody as the residential parent and name Gerald the residential parent for school purposes. The court again encouraged the parties to reach a shared parenting agreement, since they were unable to reach one since prior hearing, held on May 5, 2004. The court indicated that it would revisit the school issue after the semester was completed, to determine how well that arrangement worked.
 {¶ 95} The decision to retain Melody as residential parent in the decree was reached only after Melody twice represented to the court that she intended to remain in Ohio. In reference to the May 5, 2004 hearing, in which the court made its original best-interest determination, the trial judge stated on the record that he "had not intended to change the residential parent from [the] mother to [the] husband unless she went to Texas[,] because I did not see sufficient reason for her to go as far as need. She's personally free to go, but not take the child[ren], and then you would have to work out something there. But, if she stayed, I intended for her to continue to be the residential parent * * *."
 {¶ 96} On September 30, 2004, the divorce decree was journalized. The agreement, which was drafted by Melody's counsel, read, in relevant part, as follows:
 {¶ 97} "The Court finds, the Plaintiff[,] Melody Salisbury[,] shall be designated the sole legal custodian and residential parent of the minor child(ren). The Court finds this is in the best interest of the child(ren). The Court finds Defendant enrolled the minor child Arturo in kindergarten within the Kent City School District. The Court finds, at this time, it would be less disruptive for the child to remain in kindergarten within the Kent City School District and Orders Plaintiff to pick the child up after school. The Court will review this matter after the end of this semester, December 2004.
 {¶ 98} "The Court grants the Defendant Visitation, pursuant to the Standard Order of Visitation.
 {¶ 99} "* * *
 {¶ 100} "IT IS * * * ORDERED that a residential parent who intends to move from the residence specified in any visitation order shall immediately file with the undersigned judge a notice of intent to relocate. The notice shall specify time and place of relocation."
 {¶ 101} Although not expressly indicated as such in the judgment entry, it is this court's opinion that the trial court's order that Arturo remain enrolled in school in the Kent City School District, created a restriction on Melody's ability to remove the children from the state without the approval of the court. Although the language may appear ambiguous, the fact that Gerald lived in Kent and Melody lived in Cuyahoga Falls at the time the divorce decree was journalized leads to no other reasonable conclusion other than that Gerald was designated residential parent for school purposes. When one parent is designated as residential parent, and the other is designated as residential parent for school purposes, the practical effect of the judgment thus designating is a split-custody order. Arthurv. Arthur (1998), 130 Ohio App.3d 398, 406. Accordingly, R.C.3109.051, which governs the procedure to be followed when the party intends to relocate in the absence of a court order imposing a restriction on relocation, does not apply and the burden rests with Melody to establish that the relocation was in the best interest of the children. Victor v. Miller, 11th Dist. No. 2000-L-177, 2002-Ohio-1956, 2002 Ohio App. LEXIS 1905, at *4-*5; see also Zimmer v. Zimmer, 10th Dist. No. 00AP-383, 2001-Ohio-4226, 2001 Ohio App. LEXIS 713, at *10-11 (assigning the burden of proof to the party seeking to relocate the children where the decree imposes a restriction on relocation "is consistent with Ohio domestic relations case law, under which the party seeking a modification of the status quo bears the burden of proving that the modification is warranted") (citation omitted).
 {¶ 102} In its judgment entry granting the reallocation from Gerald to Melody, the court found, in relevant part, as follows:
 {¶ 103} "In the Decree of Divorce, Plaintiff-Wife was named residential parent and legal custodian of the parties' minor children. Plaintiff-Wife had indicated a desire to relocate to Texas and she was named residential parent with the understanding that she remain in Ohio.
 {¶ 104} "Shortly after the filing of the Decree of Divorce, Plaintiff-Wife elected to relocate to Texas. There are several understandable reasons why she would wish to relocate.
 {¶ 105} "Plaintiff-Wife notified the Court * * * of her relocation plans. She did not, however, notify the Defendant-Husband until the relocation was fait accompli. Since her relocation, contact with the minor children by the Defendant-Husband has been marginal, although each blames the other for the lack of contact.
 {¶ 106} "The court finds that each of the parties is fit, the children are loved by both, and each is willing and capable to adequately provide for the children.
 {¶ 107} "It is the finding of the court, however, that thebest interests of the children would have the Defendant-Husbanddesignated as the residential parent and legal custodian. The children would be returned to a familiar and comfortable school and residence, their playmates are in the Portage County area, and the extended family is more extensive in the Portage County Area."
 {¶ 108} All of the court's findings are supported by evidence in the record. Although Melody introduced evidence supporting her improved ability to provide for the children as the result of her relocation to Houston, and that the children appeared to be adjusting well to the change, we cannot conclude, based on the evidence presented, that Melody met her burden justifying relocation. See Wyss, 3 Ohio App.3d at 414 (it is not sufficient for the party with the burden of proof to merely show that he or she can provide a better environment than that provided by the other parent). Our review of the entire record reveals that there was competent and credible evidence supporting the trial court's decision to grant custody to Gerald based upon a best interest of the children analysis and the trial court did not abuse its discretion in designating Gerald as residential parent. Melody's second and third assignments of error are without merit.
 {¶ 109} Since we hold that the language in the September 2004 Decree of Divorce imposed a restriction on Melody's ability to relocate, thus imposing the burden of proof on Melody to demonstrate the relocation was in the best interest of the children, her failure to meet her burden disposes of the appeal, and Melody's first assignment of error related to the trial court's new trial ruling is overruled as moot. See Wilburn v.Cleveland Psychiatric Inst. (1998), 126 Ohio App.3d 153, 158, citing App.R. 12(A)(1)(c).
 {¶ 110} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas, Domestic Relations Division is affirmed.
Ford, P.J., Rice, J., concur.
[1] The court's September 30, 2004 order did not constitute a final appealable order, per R.C. 2505.02, since the issue of custody was not fully and finally determined due to the unresolved residential parent for school purposes issue. See Civ.R. 75(F) ("the court shall not enter final judgment as to a claim for divorce * * * unless * * * [i]ssues of * * * [the] allocation of parental rights and responsibilities or shared parenting have been finally determined"). As a result, the December 30, 2004 judgment entry, granting Gerald's "Motion for New Trial" was likewise not a final appealable order, since Civ.R. 59(B) requires that motions for new trial shall be served within 14 days after the entry of "judgment," which is defined by Civ.R. 54(A) as "any order from which an appeal lies." Thus, Melody's filing of the notice of appeal was premature. It was for this reason that the two appeals herein were consolidated, sua sponte, by this court.
[2] Though the February 14, 2005 judgment entry was not a nullity on jurisdictional grounds, it is nevertheless a nullity for other reasons, since it goes far beyond the scope of a nunc pro tunc ruling. A trial court may use nunc pro tunc rulings to make minor corrections, not substantive changes. McKay v. McKay
(11th Dist. 1985), 24 Ohio App.3d 74, 75. In this case, the trial court attempts to vacate a prior substantive ruling. Such action goes far beyond the nunc pro tunc powers of a trial court.