JOURNAL ENTRY AND OPINION
{¶ 1} This matter involves an appeal filed by appellant, Mark Rodkey ("Father"), and a cross-appeal filed by appellee, Suzanne M. Lutton f.k.a. Suzanne Rodkey ("Mother"), from the decision of the Cuyahoga County Court of Common Pleas, Division of Domestic Relations, regarding various motions pertaining to their parental rights and responsibilities and child support obligations. The guardian ad litem and attorney for the minor child also filed a brief. For the reasons stated below, we affirm in part, reverse in part, and remand the matter for proceedings consistent with this opinion.
 {¶ 2} The following facts give rise to this appeal. Mother and Father, both doctors, were divorced on December 30, 1998, pursuant to an uncontested judgment entry of divorce. At the time of their divorce, the parties had a two-year-old child, Mark Conrad Rodkey ("Marky" or "child"). The parties entered into a shared parenting plan regarding the allocation of parental rights and responsibilities that was incorporated into the judgment entry of divorce.
 {¶ 3} Pursuant to the shared parenting plan, the primary residence of Marky was deemed to be with Mother. It was also acknowledged that Marky would spend a significant amount of time with Father at Father's residence. The plan set forth the parties' agreement as to vacations and holidays with Marky. As to the living arrangement, the plan provides that "Mother's residence shall be considered the child's primary residence, and in the normal course of events, and except for Holiday and Vacation Schedules, and including the Father's rights as enumerated herein, the child shall reside with the Mother." Also, this section gave Father the right to have Marky on alternating weekends and during periods of vacation from school. Further, if at any time the parent entitled to Marky was not able to be with Marky for a period greater than five hours, that parent was to offer Marky to the other parent before arranging for a sitter. The plan was flexible and allowed the parties to alter their arrangement by mutual agreement.
 {¶ 4} The plan specified that neither parent could remove Marky from Cuyahoga County or an adjacent county without first obtaining written permission from the other parent or a court order. The plan further set forth that neither parent would pay child support to the other, but indicated that this provision was subject to the continuing jurisdiction of the court.
 {¶ 5} In February 2002, Mother filed a motion to remove the child from Cuyahoga County, in which she requested to relocate with Marky to Youngstown, Ohio (Mahoning/Trumbull Counties). Prior to filing this motion, Mother had accepted employment at a hospital in Youngstown. The position requires that she be within a 20-minute drive of the hospital during her 9-5 workday and when "on call," which occurs once in nine days, in addition to a weekend call schedule. Mother also filed a motion to establish child support, as well as a motion to enforce an alleged side agreement to pay child support, which was never filed or incorporated into the parties' judgment entry of divorce.
 {¶ 6} In March 2002, Father filed a motion to modify parental responsibilities, under which he sought to modify the parties' shared parenting plan and requested that he be named the primary residential parent.
 {¶ 7} In August 2002, Mother filed a motion to terminate the shared parenting plan and for an order awarding her sole custody of Marky.
 {¶ 8} The above motions were tried to a court magistrate over the course of approximately fifteen days. During the course of the litigation, the court issued an interim possession schedule.
 {¶ 9} The interim schedule is a four-week schedule under which Mother gets Marky on three of the weekends (Friday-Sunday) and one weekday night each week, plus one extra weekday night during week three. Father gets Marky one weekend per month plus three weekday nights with the exception of week three being two weekday nights. Under this staggered schedule, Marky is alternated between parents throughout the week, including school days. The interim schedule assigns holidays on an alternating basis, and assigns certain days of special meaning. The parties also entered into an agreement as to an interim summer possession.
 {¶ 10} On May 28, 2004, the magistrate issued a decision with findings of fact and conclusions of law. As relevant to this appeal, the magistrate made the following findings of fact:
"Over the course of the over (15) days of trial the Courtheard much testimony regarding Marky's strong and lovingrelationship between Marky and his parents, respectivestep-parents, and half-siblings. Mother is remarried to New-PartyDefendant Douglas Lutton, and have Three (3) children resultingfrom their union. Father is remarried to New-Party Defendant,Greta Rodkey, with whom he shares two (2) additional children.Father also has two (2) additional adult children from his priormarriage who reside outside of the state of Ohio. At the time ofthe divorce, Mother was residing in Euclid, Ohio and Father wasresiding in Waite Hill, Ohio. Sometime following each parent'srespective remarriages, both relocated, with Mother moving to6405 Suzanne Lane, Solon, Ohio 44139 and Father moving to 405Timberidge Trail, Gates Mills, Ohio 44040. Marky is presently inthe Second Grade at Arthur Road Elementary School, in the SolonPublic School System. It was undisputed that Marky occasionallywill require discipline and/or correction with regard tobehavioral difficulties and that both respective household[s]hold differing philosophies concerning discipline of Marky.However, the Court finds that the parties have been able to finda way to incorporate each parent's philosophy in this regard toMarky's benefit, at least until shortly before Mother's filing ofthe within request to relocate. Father would have the Courtbelieve that Mother unilaterally decided that the parties shouldrevert back to the limited possession schedule agreed to at thetime of the divorce as some sort of retaliatory response toFather's refusal to consent to the relocation, while Motherportrayed Father as taking extreme liberties with expanding hispossession time, all in preparation for the within litigation.Unfortunately, the court finds there to be merit in both parties'allegations in this regard. "Mother is a cardiologist. It isundisputed that at the time of divorce through July 2001, whenshe began her current employment in Youngstown, Ohio, Mother wasemployed at the Cleveland Clinic, where she was required to workextremely long and arduous hours. It is further undisputed thatMother signed an employment contract with Cardiology Associates,in Youngstown, Ohio on or about May 2001. Mother's hours ofemployment are Monday through Thursday, with a `call schedule'approximating 1 out of 9 days, as well as `weekend call.' Mothertestified that while she is at the hospital, either working 9-5or `on call' she is required by her employer to be no more thanTwenty (20) minutes away from the hospital. Thus, Mother ispresently commuting from her home in Solon to the Youngstown areaon a daily basis and `sleeps on the floor' of her office when sheis on weekend call to honor the requirement of being 20 minutesfrom the hospital. Mother contends that even under thisarrangement, she is able to `spend more time with her family thanshe did while working at the Clinic.' The Court finds thatMother's ability to spend time with Marky is primarily weekdaysbeginning at 6:00 or 7:00 p.m. onward and on weekends she is not`on call.' Mother contends her husband is available to care forMarky from the time he arrives home from school until she returnshome from work, in that he is not employed outside of the homeand serves as full-time care giver for their (3) children.
 "Father is a pediatrician and is the supervisor of thePediatric Emergency Room at Hillcrest Hospital located inMayfield, Ohio. Father has in the past and continues to enjoy avery flexible employment schedule which affords him theopportunity to be available to spend time with Marky during theweek, after school and weekday evenings. As a result, it isfurther undisputed that Father is able to volunteer at Marky'sschool [ie: assisting in the school's computer lab once per week,participating in the school's `Career Day(s)'] on a frequent andongoing basis which affords him the added opportunity for contactwith Marky during the week.
 "It is undisputed that since the divorce, through shortlybefore the filing of Mother's request to relocate, the partiesdid not strictly adhere to their possession schedule as outlinedin their Shared Parenting Plan. Rather, Father and Mother wereable to work together to afford the other with the maximum timeto be spent with Marky, within the confines of each's employmentdemands.
 It is further undisputed that, since shortly after thedivorce, Father would pick up Marky after school, either at thenoon hour, prior to entering full day Kindergarten, andimmediately after school, thereafter, and spend the better partof the week day, either returning Marky to Mother's after dinner,when Mother would be home, or often times keeping him overnightand bringing him to school the next day. There is some dispute asto how many overnights per week Father enjoyed, with Motherclaiming there were 2-3 overnights per week, while Fathercontends he had Marky more like 3-4 overnights per week. In theinfrequent event that Father would be required to work during hispossessory period of Marky, Father's wife, Greta Rodkey, would beavailable to care for Marky, in that she, too, did not workoutside the home and is a full time care giver to their (2)children. The parties appeared to operate under this flexibleschedule, allowing Marky to visit with out-of-town relatives,including grandparents, and half-siblings, incorporated in the(5) hour right of first refusal, until shortly before Motherfiled the within request to relocate to the Youngstown area withMarky. From all accounts, Marky appeared to thrive in such anenvironment of cooperation and meaningful time spent with eachparent.
 "The parties appear to have veered afar from their priorhistory of working together for Marky's best interest sinceshortly before Mother filed her request to relocate. Since thattime, both parties have behaved immaturely and have cast uglyallegations regarding each parent's/step-parents fitness toparent, which is a shame. * * *
"* * *
"Father called Dr. Donald Weinstein as a witness in the withinmatter and his report was admitted into evidence, over objection.Dr. Weinstein was secured by Father to provide a forensic custodyevaluation in the within matter. Mother failed to present asimilar witness on her behalf to controvert Dr. Weinstein'stestimony. Dr. Weinstein's ultimate recommendation, after meetingwith all parties in this matter, and after administering/scoringpsychological testing, offered an unequivocal opinion, based upona reasonable psychological certainty. Specifically, Dr. Weinsteinfound there to be no mental health pathologies involving any ofthe parties. Dr. Weinstein went on to opine that he believed itto be in Marky's best interest to maximize as much time aspossible with both parents and that Marky be permitted to resideprimarily with Father in the event Mother chose to relocate tothe Youngstown area, with maximum time be allotted for Marky tospend with Mother. Dr. Weinstein did not believe it would be inMarky's best interest to move to the Youngstown area at thistime, some seventy (70) miles from his Father, and that such amove, in his opinion, would have a deleterious effect on thechild-parent relationship.
"* * *
"The Guardian Ad Litem presented her recommendation * * *[and] recommended the following: `That Mother not be permitted torelocate with the minor child; That it was not in [Marky's] bestinterest for the parties' Shared Parenting Plan to be terminated;That Father should be named primary residential parent of Markyfor school purposes commencing with the 2004-2005 school year, asFather is available for the child after school and that such timecould be maximized without [affecting] Mother's available timewith Marky, that it is in Marky's best interest to spend as muchtime as possible with a biological parent versus a step-parent;* * *"
 {¶ 11} The magistrate reached the following determinations on the parties' motions. With respect to parental rights, the magistrate denied Mother's motion to relocate and her motion to terminate the shared parenting plan. The magistrate denied in part and granted in part Father's motion to modify parental responsibilities. In pertinent part, the magistrate found that if Mother chose not to relocate outside of Cuyahoga or an adjacent county, the shared parenting plan would remain in full force and effect, except that possession time would be exercised pursuant to the court's interim possession schedule. Additionally, if this option were exercised, the court adopted the recommended schedule of the guardian ad litem for holidays, days of special meaning and vacations. Alternatively, if Mother chose to relocate outside of Cuyahoga or an adjacent county, Father was to be designated the primary residential parent and Mother would enjoy the possession schedule she suggested for Father to enjoy. Ultimately, Mother chose not to relocate.
 {¶ 12} With respect to child support, the magistrate denied Mother's motion to enforce the alleged side agreement to pay child support. However, the magistrate granted Mother's motion to establish child support and set forth respective support obligations dependent upon Mother's decision on whether to remain in Cuyahoga or an adjoining county. The magistrate found that the unmodified portions of the shared parenting plan were to remain in full force and effect.
 {¶ 13} All parties, including the guardian ad litem, filed objections to the magistrate's decision. On July 22, 2005, the trial court issued a judgment entry that essentially adopted the magistrate's decision with one modification, requiring a sixty-day notification for summer vacation parenting time.
 {¶ 14} Father appealed the trial court's determination, and Mother has filed a cross-appeal. The guardian ad litem also filed a brief on behalf of the minor child. For clarity of review, we shall address the assigned errors in a mixed order.
PARENTAL RIGHTS ISSUES
 {¶ 15} We begin our analysis with the issues raised pertaining to parental rights. We recognize that decisions of a trial court involving the care and custody of children are accorded great deference upon review. Miller v. Miller (1988),37 Ohio St.3d 71, 74. Thus, any judgment of the trial court involving the allocation of parental rights and responsibilities will not be disturbed absent a showing of an abuse of that court's discretion. Davis v. Flickinger, 77 Ohio St.3d 415,418, 1997-Ohio-260. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
{Mother's First Assignment of Error}
 {¶ 16} "1. The trial court erred by not permitting [Mother] to move outside of Cuyahoga and adjacent counties to the Youngstown, Ohio area."
 {¶ 17} R.C. 3109.04 governs the modification of prior judgments allocating parental rights and responsibilities. A court may grant a modification of parental rights if, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, the court finds: (1) there was a change in circumstances; (2) a modification is necessary to serve the best interest of the child; and (3) the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child. R.C. 3109.04(E)(1)(a)(iii).
 {¶ 18} In relation to the first prong of the test, it generally has been held that the act of moving with a child does not, by itself, constitute a substantial change in circumstances to warrant a change of custody. See Gydosh v. Vice, Cuyahoga App. No. 80176, 2002-Ohio-1388. However, where the shared parenting plan specifically provides that the parents may not move the child from the area, the change-of-circumstances analysis is not applicable. Id. Rather, where such a provision exists, the child can be moved from the area only if the moving party demonstrates that it would be in the best interest of the child. See Id.
 {¶ 19} In this case, Mother desires to move to Youngstown with Marky; however, pursuant to the shared parenting plan, she is permitted to reside only in Cuyahoga or adjacent counties. Accordingly, the change-of-circumstances analysis is not applicable.
 {¶ 20} Next, it must be determined whether the modification is in the best interest of the child. The trial court did not engage in a best-interest analysis because it found that neither party had demonstrated the harm was likely to be outweighed by the benefit of the requested modification/termination of the shared parenting plan.
 {¶ 21} Although we do believe the trial court abused its discretion by not evaluating the best-interest factors, we nevertheless find that the result would have been the same with respect to Mother's motions. Upon our review, we find the evidence fails to support a finding that the requested relocation is in Marky's best interest.
 {¶ 22} The burden rests with the party seeking to relocate to establish that the relocation is in the best interest of the child. Salisbury v. Salisbury, Portage App. Nos. 2005-P-0010 and 2005-P-0084, 2006-Ohio-3543; Kolb v. Kolb, Lorain App. No. 02CA008045, 2003-Ohio-359. Mother fails to make any argument about the relocation being in Marky's best interest. Rather, Mother argues that the distance to where she desires to move in Youngstown is less than the distance to the western fringes of some of the adjacent counties where she could move without a court order. Mother states that the arbitrary use of county lines was error. Not only does this argument fail to address the best interest of the child, but also, it challenges a term of the shared parenting plan to which Mother agreed.
 {¶ 23} R.C. 3109.04(F)(1) provides that in determining the best interest of a child pursuant to R.C. 3109.04, the court shall consider all relevant factors. The statute sets forth a non-exhaustive list of factors that a court may consider. Some factors, such as the mental and physical health of persons involved in the situation, are non-issues in this case. The factors we view as relevant to Mother's relocation request include the following:
 {¶ 24} "(a) The wishes of the child's parents regarding the child's care;"
 {¶ 25} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 26} "(d) The child's adjustment to the child's home, school, and community;"
 {¶ 27} R.C. 3109.04(F).
 {¶ 28} The record in this case reflects that Father was opposed to Mother's relocation with Marky and desired to be named the primary residential parent. Marky has a strong and loving relationship with both of his parents and their respective families. Marky has been attending elementary school in the Solon Public School System, and Father has taken active involvement in his school activities. Father's flexible schedule permits him to be available to spend time with Marky during the week, after school, weekday evenings, and on weekends. Mother's ability to spend time with Marky is primarily on weekdays beginning at 6:00 or 7:00 p.m. and on weekends when she is not "on call." This evidence was all considered by the trial court.
 {¶ 29} It is apparent that the evidence in this case does not support a finding that the requested relocation is in Marky's best interest. We recognize both parents are loving parents with good homes for Marky. However, relocation of a child is a substantial factor in any case involving shared parenting, particularly where a greater distance is placed between the parties.[1]
 {¶ 30} The record here demonstrates that it is in Marky's best interest to maximize the time he spends with each parent given their respective schedules. It is also in Marky's best interest to allow him to engage in extra-curricular activities, and to allow Father to continue to take part in Marky's school and after-school activities. Allowing Mother to relocate with Marky would impair Father's involvement.
 {¶ 31} Because the record does not support a finding that relocation would be in Marky's best interest, we find the trial court did not abuse its discretion in denying Mother's motions. Mother's first assignment of error is overruled.
Mother's Third and Fourth Assignments of Error
 {¶ 32} "3. The trial court erred by failing to permit [Mother] to offer any evidence of [Father's] prior history of child and spousal abuse."
 {¶ 33} "4. The trial court erred in admitting the testimony of Donald Weinstein, Ph.D. and in limiting his cross-examination concerning [Father's] history of child and spousal abuse."
 {¶ 34} Under her third assignment of error, Mother argues she should have been allowed to introduce evidence of Father's prior history of child and spousal abuse. The trial court had entered an order in this case that prohibited the introduction of any evidence concerning conduct that took place prior to the entry of the final divorce decree. Mother argues that "any" history of abuse was a relevant factor to the determination of Marky's best interest. Mother argues under her fourth assignment of error that she should have been allowed to question Dr. Weinstein, Father's expert and a clinical psychologist, on the abuse issues. She further claims that Dr. Weinstein should have been prohibited from testifying, since he was not a qualified expert on child or spousal abuse.
 {¶ 35} We find no merit to these arguments. Although R.C.3109.04(F) lists prior convictions for child abuse as a factor to be considered in determining the best interest of the child, we cannot say that this factor was material to the determination in this matter or that it would have changed the outcome. As the magistrate indicated: "[The events] were alleged to have occurred during Father's first marriage many years prior to the within parties' marriage. The Court finds that Mother would have been aware of this information prior to the within parties' divorce, yet still entered into the resultant Shared Parenting Plan at the time of their divorce. Additionally, Dr. Weinstein testified that events/allegations which would have occurred in such long ago past would not have caused him to alter his recommendation in the within matter."
 {¶ 36} We find the trial court's logic was sound and the court did not abuse its discretion in prohibiting testimony regarding the alleged abuse. Further, even if the trial court should have considered this evidence pursuant to R.C. 3109.04(F), we find that any error by the trial court in excluding this evidence was harmless as to the outcome of the proceedings.
 {¶ 37} Mother's third and fourth assignments of error are overruled.
Father's Second and Third Assignments of Error
 {¶ 38} "2. The trial court erred in failing to modify the parties' shared parenting plan and designate [Father's] home as the primary residence of the minor child, Mark C. Rodkey."
 {¶ 39} "3. The trial court erred in failing to follow the recommendation of the guardian ad litem, Terri Stupica, and the forensic evaluation of Donald J. Weinstein, Ph.D. to transfer the primary residence/school residence of the minor child Mark C. Rodkey to the residence of [Father]."
Guardian ad litem's First Assignment of Error
 {¶ 40} "1. The trial court erred in failing to modify the parties' shared parenting plan and designate [Father's] residence as the primary residence of the parties' minor child, Marky."
 {¶ 41} Under these assignments of error, Father and the guardian ad litem argue that the trial court erred by failing to modify the shared parenting plan in order to designate Father as the primary residential parent and the residential parent of Marky for school purposes. We find that the trial court did abuse its discretion in failing to make this modification.
 {¶ 42} Initially, we note that the parties dispute in their briefs whether Mother was designated as the primary residential parent of Marky under the shared parenting plan. A review of the shared parenting plan reflects that Marky's primary residence was deemed to be with Mother, but both parents were considered the "residential parent" while Marky was in their care. Since Father is seeking to modify parental rights, we again apply R.C.3109.04(E)(1)(a).[2]
 {¶ 43} The record clearly evinces that a change has occurred in the circumstances of Marky since the shared parenting plan was entered. Marky is now in elementary school, and he apparently enjoys involvement in extracurricular activities. Mother has taken a job in Youngstown that places restrictions on her whereabouts, and her proposed relocation would increase the time and driving distance from Father's residence. According to Mother, Father's schedule used to require extensive travel. However, Father currently works at Hillcrest Hospital and has a flexible schedule that enables him to spend time with Marky during the week and to be involved in Marky's school and after-school activities.
 {¶ 44} The next question is whether naming Father as the primary residential parent and residential parent for school purposes would be in Marky's best interest. We have already found that the record does not support a finding that relocation is in Marky's best interest. However, separate consideration must be made as to Father's requested modification.
 {¶ 45} Here again, the trial court abused its discretion by failing to engage in a best-interest analysis. Upon our review, we find that the evidence supports a finding that this modification would be in Marky's best interest. Insofar as the trial court found Father failed to demonstrate the requisite finding that the harm of the requested modification is outweighed by its benefit, this determination was unreasonable. Further, the trial court contradicted itself with its conclusion that the shared parenting plan should not be modified by replacing the shared parenting plan schedule with the interim possession schedule.
 {¶ 46} Reviewing the factors under R.C. 3109.04(F) and other relevant factors, the modification is undoubtedly in Marky's best interest. Both parties desire to maximize their time with Marky. It is also recognized that time spent with a biological parent should take precedence to that of a step-parent or third party. Father's schedule gives him wide latitude to be available during the school week, including after-school hours. Mother, because of her work schedule, does not have as much flexibility in her schedule and is primarily available weekdays after work hours and on weekends when she is not "on call." Also, the guardian ad litem and Dr. Weinstein recommended that it would be in Marky's best interest for Father to be named the residential parent of Marky for school purposes.
 {¶ 47} As already discussed, Marky has a good relationship with both parents and members of each household. He has adjusted well in both homes. The trial court recognized that prior to this litigation both parents had been able to work well at facilitating the shared parenting plan and working together for Marky's best interest. However, as the trial court acknowledged, some unfortunate behavior has occurred in the course of litigation.
 {¶ 48} We recognize that the modification will likely require Marky to adjust to a new school. Dr. Weinstein recommended "because of [Father's] availability during the school week, * * * Marky [should] change his residence and move to dad's house and go to the school from his father's house."
 {¶ 49} Considering the above factors, the record supports a conclusion that it would be in Marky's best interest to have Father named the primary residential parent and the residential parent for school purposes. The trial court abused its discretion in failing to make this determination.
 {¶ 50} Finally, we consider the issue of whether the harm likely to be caused by a change of environment is outweighed by the advantages of the change. Marky has a good relationship with both parents and their families, and Marky has spent significant time in each home. Marky can continue to maximize time with each parent with Father being named the primary residential parent and residential parent for school purposes. Although the modification will likely result in a change in schools, this change does not outweigh the advantages involved. We conclude the record supports a finding that the harm will be outweighed by the overall benefit of the change and that the trial court's conclusion was erroneous.
 {¶ 51} Upon our review of this matter, we find the trial court abused its discretion in failing to modify the shared parenting plan to designate Father as the primary residential parent and the residential parent for school purposes.
 {¶ 52} Father's second and third assignments of error are sustained. The Guardian ad litem's first assignment of error is sustained.
Father's First Assignment of Error
 {¶ 53} "1. The trial court erred in failing to modify the parties' shared parenting plan with respect to the provision that either parent be permitted to permanently remove the minor child, Mark C. Rodkey, to the farthest reaches of the counties adjacent to Cuyahoga County without the written consent of the other parent or an order of the court."
Guardian ad litem's Second Assignment of Error
 {¶ 54} "2. The trial court erred in failing to modify the shared parenting plan as it relates to the relocation provision to prohibit either party from permanently removing the minor child to the farthest limits of the adjacent counties of Cuyahoga County without prior written consent of the other parent or order of the court."
 {¶ 55} Father and the guardian ad litem argue that the trial court should have modified the provision in the shared parenting plan that allows a parent to relocate with Marky to the furthest reaches of the counties adjacent to Cuyahoga County. Father states that the distance represented by such a relocation by Mother would negatively impact his time with Marky and Marky's best interest.
 {¶ 56} In light of our determination that Father should be named the primary residential parent of Marky, we do not find a sufficient basis to warrant a modification of this provision of the shared parenting plan at this time. Accordingly, Father's first assignment of error and the guardian ad litem's second assignment of error are overruled.
Mother's second and fifth assignments of error
 {¶ 57} "2. The trial court erred by modifying the existing plan for shared parenting when it specifically found that neither party had established the grounds to permit modification."
 {¶ 58} "5. The trial court erred in entering an ex parte interim possession order in violation of Local Rule 17(A)."
 {¶ 59} Under these assignments of error, Mother challenges the interim possession order that was entered ex parte by the trial court on October 10, 2002, and subsequently adopted by the trial court in its final judgment. Father claims that any error in entering the interim possession order was rendered harmless because the trial court conducted extensive pretrial hearings and interviews relating to the possession order before implementing the possession schedule. Also, the interim order was adopted following a lengthy trial concerning the matter.
 {¶ 60} Because we have found that Father should have been named the primary residential parent, we find that the interim possession schedule is vacated as it is not in Marky's best interest.
CHILD SUPPORT
 {¶ 61} The following assignment of error was raised by Father pertaining to the issue of child support:
 {¶ 62} "4. The trial court erred in awarding child support to [Mother] based on the lack of change of circumstances, the improper calculation of support and the failure to deviate."
 {¶ 63} In light of our finding that Father should have been named primary residential parent, we find the trial court erred in awarding child support to Mother. However, we recognize that the trial court's entry indicated that the parties had entered a stipulation with respect to child support. The stipulation included an amount that Mother would owe if Father were to be designated the primary residential parent under the shared parenting plan. In light of our decision in this matter, we must remand the issue of child support to the trial court.
CONCLUSION
 {¶ 64} We affirm the trial court's ruling with respect to Mother's request to relocate with Marky. We reverse the trial court's decision to deny Father's request to be designated the primary residential parent and residential parent for school purposes, and its decision to award child support to Mother. We vacate the interim possession schedule that was adopted by the trial court.
 {¶ 65} On remand, the trial court shall modify the shared parenting plan to reflect Father as the primary residential parent of Marky and the residential parent for school purposes beginning with the 2006-2007 school year. In order to maximize time with each parent, Mother should, at a minimum, be given possession of Marky three out of four weekends per month, commencing Friday after school, with consideration given to Mother's call schedule. The trial court shall also establish a summer/vacation schedule.
 {¶ 66} The parties shall submit proposed schedules to the trial court within fourteen days of this decision. The trial court shall promptly conduct a hearing on remand, and shall make any further modifications in the possession schedule and the terms of the shared parenting plan that are in accordance with this decision and that are consistent with Marky's best interest. Pursuant to the shared parenting plan and R.C. 3109.04(E)(2)(a), the parties may agree to modify the schedule or other terms of the shared parenting plan. Additionally, the trial court shall consider the child support obligation of Mother, if any.
Judgment affirmed in part, reversed in part, vacated in part.
This cause is affirmed in part, reversed in part and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellant and appellee share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court, Domestic Relations Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
A. Rocco, J., and Kilbane, J., Concur.
[1] Even R.C. 3109.04(F)(2)(d) sets forth "the geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting" as a factor to be considered in determining whether shared parenting is in the best interest of the child.
[2] Where the modification to a shared parenting plan does not involve reallocation of parental rights, the court may modify the plan based upon a finding that the change is in the best interests of the children under R.C. 3109.04(E)(2)(b). Because the modification herein does involve a substantial change in parental rights, we apply R.C. 3109.04(E)(1)(a).