[Cite as *Scott v. Nameth*, 2016-Ohio-5532.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Andrew P. Scott et al., | : | |
| Plaintiffs-Appellees/ Cross-Appellants, | : | |
| | : | No. 16AP-64 |
| v. | | (C.P.C. No. 13CV-6905) |
| | : | |
| George P. Nameth, Jr. et al., | | (REGULAR CALENDAR) |
| | : | |
| Defendants-Appellants/ Cross-Appellees. | : | |

D E C I S I O N

Rendered on August 25, 2016

**On brief:** *Law Office of Brian M. Garvine, LLC*, and *Brian M. Garvine*, for appellees/cross-appellants. **Argued:** *Brian M. Garvine.*

**On brief:** *Stephen H. Dodd*, for appellants/cross-appellees. **Argued:** *Stephen H. Dodd.*

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Defendants-appellants/cross-appellees, George P. Nameth, Jr. et al. ("the Nameths"), and plaintiffs-appellees/cross-appellants, Andrew P. Scott et al. ("the Scotts"), appeal from a judgment of the Franklin County Court of Common Pleas, which adopted a magistrate's finding regarding the Scotts' frivolous conduct under R.C. 2323.51 but denied the Nameths' motion for award of attorney fees. For the following reasons, we affirm the trial court judgment.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}   This is the second appeal this court has addressed regarding the conflict between the Scotts and the Nameths.  Previously, we affirmed the trial court's decision to grant the Nameths' motion for summary judgment in *Scott v. Nameth*, 10th Dist. No. 14AP-630, 2015-Ohio-1104, where we described the underlying facts of the case as follows:

> The Scotts and the Nameths are next door neighbors.  Louella Nameth and her daughter Melissa Nameth purchased the property at 3003 Cortona Road in 2000.  George Nameth, Louella's son, moved in with his mother and sister in 2004. John and Anna Scott, a married couple, live in the house next door at 3011 Cortona Road.  Andrew and Russell Scott are John and Anna's two adult sons who do not live at the 3011 Cortona Road property with their parents but are at the house frequently to visit and help with yard work.
>
> Sometime in 2010, the Nameths built a six-foot privacy fence on their property and installed 13 security cameras around the perimeter of their property.  The Nameths hired a security company to install the cameras, and the security company recommended the locations of the cameras.  The cameras intended to cover the west side of the Nameths' property also capture a small portion of the Scotts' yard, a situation the Nameths describe as "unavoidable."  (George Nameth Affidavit, ¶ 7.)  Though the Scotts are concerned the cameras can be used to look into their home through the windows, the Nameths deny that any cameras are pointed at the windows of the Scotts' residence. The footage from the cameras automatically and continuously stores on a hard drive and then automatically erases after a certain period of time based on a predetermined cycle to create space for newer video footage.
>
> Because of the presence of the cameras on the Nameths' property, Anna and John Scott both describe themselves as being "uncomfortable" in their home and yard.  (John Scott Affidavit, ¶ 11-12; Anna Scott Affidavit, ¶ 10-11.)  They further feel they do not have full use of the inside or outside of their home due to the cameras, and they do not open the blinds or curtains on the side of the house that faces the Nameths' property due to the possibility of being under surveillance. Additionally, John and Anna Scott indicate friends and family members have told them they are uncomfortable visiting in

the Scotts' yard due to the presence of the Nameths' cameras, and the Scotts now entertain in their yard infrequently.

On June 24, 2013, the Scotts filed a complaint against the Nameths asserting claims for civil nuisance and negligence. Specifically, the Scotts allege the Nameths use their security cameras to conduct surveillance on the Scotts property, and to intimidate, harass, and provoke the Scotts. On March 31, 2014, the Nameths filed a motion for summary judgment arguing there were no genuine issues of material fact related to any of the Scotts claims and the Nameths were therefore entitled to judgment as a matter of law.

In a July 16, 2014 decision and entry, the trial court granted the Nameths' motion for summary judgment. The trial court determined the Scotts had not asserted two distinct claims for nuisance and negligence, but instead one claim for a private qualified nuisance. Concluding the Scotts failed to demonstrate any damages consistent with those deemed compensable under Ohio nuisance law, the trial court found there remained no genuine issues of material fact related to any of the Scotts' claims.

*Id.* at ¶ 2-6.

{¶ 3} In *Scott*, the Scotts argued that they need not demonstrate physical discomfort if they could establish that their discomfort is connected to the loss of use of their property. *Id.* at ¶ 15. We disagreed, stating:

[I]t is important to distinguish uncomfortable as an emotion versus being physically uncomfortable. The Supreme Court of Ohio in *Banford* [*v. Aldrich Chem. Co., Inc.*, 126 Ohio St.3d 210, 2010-Ohio-2470,] is clear that "[i]t has long been recognized that a nuisance must materially interfere with physical comfort." *Banford* at ¶ 28. The *Banford* court explained physical discomfort to be "offensive physically to the senses," or, in other words, affecting one's sight, sound, smell, hearing, or touch. *Id.* " 'Cases supporting recovery for personal discomfort or annoyance involve either excessive noise, dust, smoke, soot, noxious gases, or disagreeable odors as a premise for awarding compensation.' " *Id.* at ¶ 26, quoting *Widmer* [*v. Fretti*, 95 Ohio App. 7, 18 (6th Dist.1952)]. The Supreme Court then explicitly held that "in order to recover damages for annoyance and discomfort in a nuisance claim, a plaintiff must establish that the nuisance caused physical discomfort." *Id.* at ¶ 28.

\* \* \*

> Here, at best, the Scotts allege that they choose not to use portions of their property due to the fear of being under surveillance. There is no physical reason they cannot use their property. Thus, the fear and emotional discomfort the Scotts allege simply is not enough under the controlling standard articulated in *Banford*. Without an allegation of physical discomfort, the Scotts have not alleged or demonstrated actual, compensable damages.

*Id.* at ¶ 15, 17. The Scotts did not further appeal the summary judgment decision.

{¶ 4} The present appeal involves the Nameths' motion for award of attorney fees under R.C. 2323.51 and Civ.R 11, which the Scotts opposed. A magistrate conducted a hearing on the matter on August 5, 2015 and, thereafter, rendered a decision granting the Nameths' motion. The magistrate found that the conduct of the Scotts and their attorney in filing and prosecuting the action and appeal constituted frivolous conduct as defined by R.C. 2323.51(A)(2)(a)(ii) and (iii) but did not find a willful violation of Civ.R. 11. The magistrate additionally found that from the date the Nameths' attorney received the Scotts' complaint to the date of the hearing on the present motion, the Nameths incurred attorney fees in the amount of $7,475. However, the magistrate awarded attorney fees in the amount of $2,350 to reflect only those fees incurred from March 31, 2014, the date the Nameths filed the motion for summary judgment, which, according to the magistrate, placed the Scotts and their attorney "on notice (if they were unaware until that time), that Ohio case law, in particular *Banford*, precluded the Scotts' nuisance claim." (Aug. 10, 2015 Mag. Decision at 7.)

{¶ 5} Both parties filed objections to the magistrate's decision. The Scotts argued that "[t]he Magistrate erroneously found the exclusive method to establish a private qualified nuisance is by alleging physical discomfort" and, generally, that the magistrate erroneously found the Scotts' claims frivolous. (Scotts' Objs. to Mag.'s Decision at 2.) The Nameths argued they should have received the full amount of attorney fees incurred in defending the entire course of litigation, not just fees incurred since their motion for summary judgment. Neither party filed a transcript with the objections or objected to the magistrate's findings of fact or conclusion under Civ.R. 11.

{¶ 6}   The trial court adopted the magistrate's decision finding frivolous conduct under R.C. 2323.51(A)(2)(a)(ii) and (iii), determining that "no reasonable attorney would have continued to prosecute this action after reviewing *Banford* and learning [the Scotts] suffered no physical discomfort as a result of the alleged nuisance."  (Dec. 30, 2015 Trial Ct. Decision at 7.)  In doing so, the trial court distinguished *Nithiananthan v. Toirac*, 12th Dist. No. CA2014-02-021, 2015-Ohio-1416; *Zang v. Engle*, 10th Dist. No. 00AP-290 (Sept. 19, 2000); *Bullock v. Oles*, 7th Dist. No. 99 CA 223 (Sept. 24, 2001); and *Stoll v. Parrott & Strawser Props., Inc.*, 12th Dist. No. CA2002-12-133, 2003-Ohio-5717.  The trial court additionally found that, although the magistrate's award of attorney fees is supported by law, it would not award attorney fees considering the facts and history of the case.  The trial court cited the "long history of animosity and litigiousness between the parties," which included restraining orders, the filing of criminal charges, and the filing and subsequent dismissal of various lawsuits.  (Trial Ct. Decision at 8.)  The trial court noted that "[b]oth parties come before the Court with unclean hands, and as a result, each party shall bear their own legal costs."  (Trial Ct. Decision at 9.)  Therefore, the trial court overruled the Scotts' objections, adopted and modified the magistrate's decision in part, and denied the Nameths' motion for award of attorney fees.

{¶ 7}   Both the Scotts and the Nameths filed timely appeals to this court.

## II.  ASSIGNMENTS OF ERROR

{¶ 8}   The Scotts assign the following assignment as error:

> WHETHER THE TRIAL COURT ERRED IN FINDING CROSS-APPELLANTS' PRIVATE QUALIFIED NUISANCE CLAIM WAS FRIVOLOUS UNDER R.C. 2323.51(A)(2)(a)(ii) AND R.C. 2323.51.(A)(2)(a)(iii).

{¶ 9}   The Nameths assign the following assignment as error:

> The Common Pleas Court erred by not awarding attorney's fees in favor of Appellants (Defendants) and against Appellees (Plaintiffs) and Appellees' Counsel under O.R.C. 2323.51.

## III.  STANDARD OF REVIEW

{¶ 10} In ruling on objections to a magistrate's decision, the trial court must undertake an independent review of the matters objected to in order "to ascertain [whether] the magistrate has properly determined the factual issues and appropriately

applied the law."  Civ.R. 53(D)(4)(d).  Generally, "[a]n appellate court reviews the trial court's decision to adopt, reject or modify the Magistrate's decision under an abuse of discretion standard."  *Tewalt v. Peacock*, 3d Dist. No. 17-10-18, 2011-Ohio-1726, ¶ 31; *Bell v. Nichols*, 10th Dist. No. 10AP-1036, 2013-Ohio-2559, ¶ 16.  "An abuse of discretion may be found when the trial court 'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.' "  *PHH Mtge. Corp. v. Ramsey*, 10th Dist. No. 13AP-925, 2014-Ohio-3519, ¶ 14, quoting *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶ 15 (8th Dist.).  We review questions of law de novo.  *Id.*, citing *State v. Vinson*, 11th Dist. No. 2013-L-015, 2013-Ohio-5826, ¶ 8.

## IV.  DISCUSSION

### A. The Scotts' Cross-Appeal

{¶ 11}  For ease of discussion, we will address the Scotts' cross-appeal first.  In it, the Scotts argue that the trial court erred in determining that their continued prosecution of a private qualified nuisance claim was frivolous under R.C. 2323.51(A)(2)(a)(ii) and (iii).

{¶ 12}  In part pertinent to this appeal, R.C. 2323.51(A)(2) states that "[f]rivolous conduct" means:

> (a) Conduct of [a] party to a civil action * * * or [a] party's counsel of record that satisfies any of the following:
>
> * * *
>
> (ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.
>
> (iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

{¶ 13}  In this context, "[c]onduct" means "[t]he filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action, the filing of a pleading, motion, or other paper in a civil action, including, but not limited to, a motion

or paper filed for discovery purposes, or the taking of any other action in connection with a civil action."  R.C. 2323.51(A)(1)(a).

{¶ 14} Under R.C. 2323.51(A)(2)(a)(ii), conduct is frivolous when "no reasonable attorney would have brought the action in light of the existing law."  *Groves v. Groves*, 10th Dist. No. 09AP-1107, 2010-Ohio-4515, ¶ 17.

{¶ 15} The Scotts primarily argue that *Banford v. Aldrich Chem. Co., Inc.*, 126 Ohio St.3d 210, 2010-Ohio-2470, does not stand for the proposition that a plaintiff bringing a qualified private nuisance claim for damages must allege physical discomfort. In support of their argument, the Scotts cite to *Stoll, Zang, Bullock*, and *Nithiananthan*.

{¶ 16} To the extent that the Scotts essentially argue that the trial court incorrectly determined the existing law of nuisance, we decline to address this issue again.  In *Scott*, we thoroughly analyzed *Banford* and concluded that an allegation and evidence of physical discomfort is required to support a qualified nuisance claim for damages.

{¶ 17} Alternatively, the Scotts argue that, because these aforementioned cases do not, in their opinion, require physical discomfort to support a nuisance claim, they at least support a good-faith argument to extend, modify, or reverse existing law or to establish new law.  First, the Scotts argue that the following language in *Banford* supports a good-faith basis to make a legal argument that nuisance can be based on fear and emotions without a physical component, at least in situations that involve the loss of use of property:

> For instance, a person may recover for annoyance and discomfort for a nuisance, including fear and other emotions, without a physical component if the annoyance or discomfort are connected to the person's loss of use or loss of enjoyment of property.  In *Stoll v. Parrott & Strawser Properties, Inc.*, Warren App. CA2002-12-133, 2003 Ohio 5717, P 25, 2003 WL 22427815, the jury awarded damages for annoyance and discomfort that the plaintiffs experienced in the use and enjoyment of their property.  The plaintiffs testified that they had been unable to leave their property when it flooded due to work in a nearby development.  After each flooding incident, they spent two to three days cleaning up debris in their yard.

*Id.* at ¶ 30.

{¶ 18} While the Scotts' statement of law may be true, they have not alleged or sought to present evidence of loss of use of property of the type that formed the basis for *Stoll*. As we stated in *Scott, Stoll* involved loss of use of property caused by flooding where "[h]ere, at best, the Scotts allege that they choose not to use portions of their property due to the fear of being under surveillance. There is no physical reason they cannot use their property." *Scott* at ¶ 17. Considering the above, we do not find this language in *Banford* or *Stoll* to support a good-faith argument based on the facts presented here.

{¶ 19} Next, the Scotts argue that a good-faith argument against a physical discomfort requirement is supported by *Zang, Bullock, and Nithiananthan*. We agree with the trial court that *Zang* and *Bullock* are easily distinguishable as pre-*Banford* cases which also alleged and presented evidence of physical discomfort, some affront on the senses, to support a claim of nuisance. The plaintiffs in *Zang* presented evidence that their mood and ability to concentrate was affected by the noise of barking dogs, and the plaintiffs in *Bullock* presented evidence that they suffered nausea, headaches, and fatigue due to a defective septic tank.

{¶ 20} Regarding *Nithiananthan*, the only post-*Banford* case, we note that the Scotts did not raise or discuss *Nithiananthan* until their objections to the magistrate's decision, well after their initial complaint, their opposition to summary judgment, and our opinion on summary judgment in *Scott*. Furthermore, *Nithiananthan* did involve an allegation of physical discomfort. Unlike the case here, the *Nithiananthan* plaintiffs' claims related to their neighbor's use of surveillance cameras was supplemented by allegations and evidence of conduct which affected the plaintiffs' sleep. As we already stated in *Scott*, "[t]he Supreme Court of Ohio in *Banford* is clear that '* * * a nuisance must materially interfere with physical comfort.' " *Scott* at ¶ 15, quoting *Banford* at ¶ 28. Considering *Nithiananthan* in light of *Banford*, we cannot agree with the Scotts that *Nithiananthan* supports a good-faith argument that, despite *Banford*, "the use of cameras and lighting directed at a neighbor constituted a nuisance without any finding of physical discomfort." (Scotts' Brief at 7.)

{¶ 21} Considering the facts of this case and the legal theory pursued by the Scotts, we find that the trial court did not err in determining the Scotts' continued prosecution of this action was frivolous under R.C. 2323.51(A)(2)(a)(ii).

{¶ 22} The trial court additionally found the Scotts' continued prosecution of the qualified nuisance claim frivolous under R.C. 2323.51(A)(2)(a)(iii). "R.C. 2323.51(A)-(2)(a)(iii) presents a factual question; namely, whether a party's allegations have evidentiary support." *Carasalina LLC v. Bennett*, 10th Dist. No. 14AP-74, 2014-Ohio-5665, ¶ 32, citing *Hunt v. Allen*, 5th Dist. No. 11-CA-70, 2012-Ohio-1212, ¶ 33. "[A] party only needs minimal evidentiary support for its allegations or factual contentions to avoid a frivolous conduct finding." *Carasalina* at ¶ 36.

{¶ 23} The Scotts argue that they "satisfied the physical discomfort requirements of *Banford*" pursuant to their affidavits. (Scotts' Brief at 20.) As a preliminary issue, we note that the Scotts did not file a transcript of the hearing. The failure to file a transcript under Civ.R. 53(D)(3)(b)(iii) waives all factual challenges to the magitrate's opinion on appeal. *Gill v. Grafton Corr. Inst.*, 10th Dist. No. 09AP-1019, 2010-Ohio-2977, ¶ 14 ("where a party files objections to a magistrate's decision in the trial court, but does not support those objections with a transcript or affidavit, that party is precluded from arguing on appeal that the trial court erred in its factual determinations"); *Estate of Stepien v. Robinson*, 11th Dist. No. 2013-L-001, 2013-Ohio-4306, ¶ 28-29; Civ.R. 53(D)(3)(b)(iii) ("An objection to a factual finding * * * shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding."). *See also Stepien* at ¶ 29, quoting *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980) (" 'When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm.' ").

{¶ 24} The factual findings contained in the magistrate's decision does not include allegations or evidence of physical discomfort suffered by the Scotts. Therefore, we additionally find that the trial court did not err in determining the Scotts' continued prosecution of this action was frivolous under R.C. 2323.51(A)(2)(a)(iii).

{¶ 25} In sum, we conclude that the trial court did not err in finding that the Scotts engaged in frivolous conduct under R.C. 2323.51 in continuing to pursue allegations that, even if true, would not constitute a qualified private nuisance. Accordingly, we overrule the Scotts' assignment of error presented on cross-appeal.

**B. The Nameths' Appeal**

{¶ 26} Under their assignment of error, the Nameths contend the trial court erred by not awarding them attorney fees as a sanction for the Scotts' frivolous conduct under R.C. 2323.51.

{¶ 27} First, the Nameths disagree with the trial court's decision to order a hearing on the motion for award of attorney fees. They contend that since the trial court already knew the particular facts and history of this case, which was its basis for ultimately denying attorney fees, it was unreasonable to order a hearing. In the Nameths' view, ordering such a hearing effectively punished the Nameths because they incurred additional attorney fees.

{¶ 28} In support of their argument, the Nameths cite to *Reyes v. McCabe*, 10th Dist. No. 96APE05-690 (Mar. 31, 1997). Our reading of *Reyes* shows that it stands for the proposition that, while a trial court must hold a hearing on motions that demonstrate arguable merit, "[w]here the trial court determines that there is no basis for the imposition of sanctions, it may deny the motion without a hearing." *Id.* Instead of supporting the Nameths' proposition, *Reyes* illustrates that the trial court has discretion to make this decision. Moreover, the hearing held here first addressed the merits of the frivolous conduct allegation, a determination which is separate from the trial court's decision whether to then assess sanctions after a frivolous conduct finding. R.C. 2323.51(B)(2)(a). Considering the above, we disagree with the Nameths' argument regarding the trial court's decision to order a hearing.

{¶ 29} Second, the Nameths argue that the trial court's focus on their own purported "unclean hands" is inconsistent with R.C. 2323.51, and the ultimate decision determining that the Scotts were frivolous but then refusing to award attorney fees is unreasonable. (Trial Ct. Decision at 9.) As a result, the Nameths believe they are entitled to all their attorney fees, rather than no fees or the truncated fees recommended by the magistrate.

{¶ 30} A party who has commenced or persisted in maintaining a frivolous action may be assessed sanctions. *Carasalina* at ¶ 30. Specifically, "R.C. 2323.51 provides that a court *may* award court costs, reasonable attorney fees, and other reasonable expenses incurred in connection with the civil action or appeal to any party to the civil action or

appeal who was adversely affected by frivolous conduct." (Emphasis added.) *Bell* at ¶ 17. R.C. 2323.51(B)(2) specifies, in pertinent part, that:

> An award *may* be made pursuant to division (B)(1) of this section upon the motion of a party to a civil action or an appeal of the type described in that division or on the court's own initiative, but only after the court does all of the following:
>
> (a) Sets a date for a hearing to be conducted in accordance with division (B)(2)(c) of this section, to determine whether particular conduct was frivolous, to determine, if the conduct was frivolous, whether any party was adversely affected by it, and to determine*, if an award is to be made,* the amount of that award.

(Emphasis added.)

{¶ 31} Furthermore, the statute contemplates that "any relevant evidence" may inform the decision to impose sanctions, and the amount of the trial court's award of attorney fees may be less than the attorney fees that were reasonably incurred by a party. R.C. 2323.51(B)(2)(c) and (B)(3). The trial court's decision to assess, or not assess, an award of attorney fees for frivolous conduct is reviewed for an abuse of discretion. *Carasalina* at ¶ 48; *Burchett v. Larkin*, 192 Ohio App.3d 418, 2011-Ohio-684, ¶ 22 (4th Dist.). An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 32} As provided above, R.C. 2323.51 clearly affords the trial court considerable discretion to decline awarding attorney fees even after a frivolous conduct finding. We disagree that the trial court's consideration of the history of the case, including the Nameths' own conduct, is inconsistent with the language of the statute or unreasonable on the facts of this case. Therefore, we find the trial court did not abuse its discretion in deciding to not award attorney fees. As such, the Nameths' argument regarding the amount of the award is moot.

{¶ 33} Accordingly, the Nameths' assignment of error is overruled.

## V. CONCLUSION

{¶ 34} Having overruled the assignments of error presented on both the Nameths' appeal and the Scotts' cross-appeal, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and LUPER SCHUSTER, JJ., concur.

_____