[Cite as *Rankin v. Rankin*, 2021-Ohio-1967.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Andrea Rankin, :

    Plaintiff-Appellee, : Nos. 20AP-223
and 20AP-304

v. : (C.P.C. No. 17DR-2010)

Andrew Rankin, : (REGULAR CALENDAR)

    Defendant-Appellant. :

---

D E C I S I O N

Rendered on June 10, 2021

---

**On brief:** *Kuhn Limited*, and *Ryan D. Kuhn*, for appellee.
**Argued:** *Ryan D. Kuhn.*

**On brief:** *Petroff Law Offices LLC*, *Christopher L. Trolinger*,
and *Ronald R. Petroff*, for appellant. **Argued:** *Christopher L.
Trolinger.*

---

APPEALS from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch

BROGAN, J.

**{¶ 1}** Defendant-appellant, Andrew Rankin ("Drew"), appeals two judgments entered by the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch: a April 13, 2020 decision and judgment entry ruling on Drew's motion to modify a shared parenting plan, and a May 28, 2020 decision and judgment entry ruling on the Civ.R. 75(H) motion for relief from judgment filed by Drew and request for attorney fees filed by plaintiff-appellee, Andrea Rankin ("Andrea"). For the following reasons, we affirm the trial court judgments.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2}    Drew and Andrea met while students at The Ohio State University. Following graduation, they secured jobs in Columbus and in September 2013 they married. The parties had a child, E.R., in 2016. The following year, the parties petitioned the court to dissolve their marriage and their marriage was ultimately terminated pursuant to a decree of dissolution filed June 30, 2017. They further agreed to shared parenting of E.R., the terms of which were journalized in the shared parenting plan.  In pertinent part, the parties agreed in the shared parenting plan:

> The parents shall share in the parenting of the minor child so that each parent may continue having a full and active role in providing a sound and loving environment for her.
>
> * * *
>
> 2. RESIDENTIAL PARENT AND LEGAL CUSTODIAN. Each parent is hereby designated the residential parent and legal custodian of [E.R.].
>
> The designation in this Plan or in a final Shared Parenting Decree of the residential parent for purpose of determining school attendance of the minor child * * * does not affect the designation of each parent as the "residential parent," the "residential parent and legal custodian," or the "custodial parent" of the minor child.
>
> 3.  SCHOOL PLACEMENT PARENT.  Mother is designated the residential parent for school placement purposes for [E.R.], so long as she resides in one of the following school districts that the parties have agreed upon and approved:
>
> > o  Jackson Local School District (Massillon, Ohio)
> > o  Hilliard City School District
> > o  Dublin City School District
> > o  New Albany-Plain Local School District
> > o  Worthington City School District
>
> If Mother is not residing in one of the above referenced school districts and Father is residing in one of the above referenced school districts, then Father shall be designated as residential parent for school placement purposes. If neither party is residing in one of the above referenced school districts, then Mother shall be designated residential parent for school placement purposes.

4.  PHYSICAL LIVING ARRANGEMENTS.

At the time of entering into this Shared Parenting Plan, Mother resides in Galloway, Ohio and Father resides in Columbus, Ohio. The parties contemplate that Mother may elect to relocate with [E.R.], to Jackson Township, Ohio (Canton area) where Mother grew up and where Mother's family resides, prior to [E.R.'s] enrollment in kindergarten.

The parents agree that if Mother elects to relocate to Jackson Township, Ohio, she will not do so until May 1, 2019, at the earliest.  If Mother elects to relocate, she will have a window of time between May 1, 2019 and the summer immediately prior to [E.R.'s] enrollment in Kindergarten to do so.  If Mother relocates, she shall give Father at least 90 days', written notice of her intent to relocate.  The parties contemplate that Mother may reside, temporarily with her parents in Jackson Township, Ohio following her relocation. However, Mother shall obtain her own residence within 180 days after her relocation.

It is the present understanding of the parties that Father also will relocate to the Canton, Ohio area (defined as: Jackson Township, Ohio, Canton, Ohio or Massillon, Ohio), if Mother and the child relocate, to be closer to the child, as Father may have the ability to transfer to the Canton area with his present employment.  Nothing in this section requires Mother to relocate to Jackson Township, Ohio.  Further, nothing in this section is intended to prevent Mother or Father from relocating from the Hilliard School District to a residence in Dublin, Ohio, Worthington, Ohio or New Albany, Ohio.  The parents have set forth alternate parenting time schedules, below, to address parenting time if they both reside in the same geographical location (i.e. within 25 miles of one another), and also to provide for parenting time in the event that Mother relocates to Jackson Township, Ohio, but Father does not reside in the Canton area (defined as Jackson Township, Massillon, or Canton, Ohio).

(May 23, 2017 Shared Parenting Plan at 1-8.) The plan continued to proscribe certain regular parenting time so long as both parents resided in central Ohio, Jackson Township, Massillon or Canton, Ohio and another scenario of regular parenting time if Andrea relocated to Jackson Township, Ohio but Drew resided outside of Jackson Township, Massillon or Canton. The plan states it "reflects the current agreement of the parents respecting the care and support of the minor child" and that "[b]oth parents believe that this Shared Parenting Plan is in the child's best interests." (May 23, 2017 Shared Parenting

Plan at 24.) It also provides leeway for modification: "Both parents recognize the need for flexibility to meet the child's best interests, as may be necessitated by future circumstances. To this end, the parents understand that, under Ohio law, they may modify this Plan as may be necessary or desirable to serve the child's best interests. In addition, the parents agree that the Court may modify any and all provisions of this Shared Parenting Plan in the event that they are unable to resolve any dispute." (May 23, 2017 Shared Parenting Plan at 24.)

{¶ 3} The trial court found that shared parenting, in accordance with the shared parenting plan, was in the best interest of E.R. and incorporated the plan into a Shared Parenting Decree dated June 30, 2017. According to the decree, the terms of the shared parenting plan became orders of the court and the parties were ordered to "fulfill each and every obligation imposed by the [s]hared [p]arenting [p]lan." (June 30, 2017 Shared Parenting Decree at 2.) The decree further stated the shared parenting plan was subject to modification by request of either party.

{¶ 4} Both parties remarried and obtained residences, approximately one mile apart from each other, in the Hilliard school district. E.R. attended preschool in the area and developed a friendship there. By all accounts, the shared parenting arrangement generally worked smoothly, and the parents' maintained a positive and healthy environment for E.R.

{¶ 5} In early February 2019, Andrea provided Drew with written notice of her intent to relocate to the Canton, Ohio area in the Jackson Local Township school district. On February 6, 2019, Drew filed a motion to modify the shared parenting plan. In the motion Drew argued:

> [S]ince the contemplation and filing of the parties' Joint Shared Parenting Plan, Father's work situation has changed. Specifically, the position with Father's employer that was previously available in Northeast Ohio no longer exists. Further, over the past two years, Father has established himself as a market leader in the Central Ohio area. As such, finding a new job in the Jackson Township, Ohio area would result in a significant pay cut.
>
> As Father is currently exercising time on a 50/50 basis, Mother's relocation to Jackson Township, Ohio is no longer in the child's best interest as it would result in a *significant* decrease in parenting time. Undoubtedly, given the child's young age, this would seriously hurt the parent-child

> relationship that has been established over the past year and a half. Based on these new circumstances, Father requests that Mother's request to relocate be denied, or, in the alternative, that the minor child be ordered to remain in Central Ohio should Mother choose to proceed with the move.

(Emphasis sic.) (Feb. 6, 2019 Motion to Modify Shared Parenting Plan at 2-3.) Drew also requested a change to the vacation provision of the shared parenting plan, an issue not challenged in this appeal.

{¶ 6} A trial on Drew's motion to modify the shared parenting plan commenced August 19, 2019 in front of a trial court magistrate. At the time of the hearing before the magistrate, both parties were expecting a child in the fall with their respective new spouses. Following the trial, the magistrate granted Drew's motion to modify the shared parenting plan and specified, among other changes, that the school placement section of the plan should state:

> Both parents are designated the residential parent for school placement purposes for the minor child for so long as they both continue to reside within the same school district (currently Hilliard City School District). Should either parent relocate outside of the current school district (Hilliard City Schools) and the other parent chooses not to relocate with the other parent to the same school district, the other parent (the parent remaining within the Hilliard City School District) shall be designated the residential parent for school placement purposes.

(Footnote omitted.) (Nov. 26, 2019 Mag.'s Decision at 16.)

{¶ 7} Andrea filed an objection to the magistrate's decision. Andrea argued in pertinent part that the magistrate made a number of findings and modifications that were never requested by either party and that such modifications were not in E.R.'s best interest. Andrea specifically contended the magistrate erred in failing to enforce or interpret the shared parenting agreement and that the failure to do so improperly placed the burden on her instead of Drew. Andrea further believed the magistrate: ignored Andrea's reasons for relocating entirely, failed to consider Drew's lack of credibility, his desire to relocate outside of Hilliard, his indecisiveness, and his job prospects in the Canton area, did not consider E.R.'s young age compared to the weight given to her ties to her community, and found "hostility" unsupported by the record. (Obj. at 21.)

{¶ 8}    A hearing on the objection was held by the trial court judge in February 2020. By decision filed April 13, 2020, the trial court judge granted, in part, Andrea's objection to the magistrate's decision. Specifically, the trial court judge found that it is in E.R.'s best interest for her parents to continue to have shared parenting in accordance with the shared parenting plan, with modifications to the plan to allow for more out-of-state vacation with E.R. and to provide Drew with additional parenting time if he remains in Central Ohio after Andrea moves to Canton.

{¶ 9}    Drew filed a notice of appeal of the April 13, 2020 judgment, a motion to stay the trial court decision, and a motion for an emergency restraining order prohibiting Andrea from removing E.R. from Franklin County and relocating to Canton. The trial court denied both motions. Drew then filed a motion for relief pending appeal pursuant to Civ.R. 75(H) asking the trial court to modify Drew's parenting time while the appeal was pending. Andrea responded contesting the modification and requesting attorney fees she incurred in defending his various motions. On May 28, 2020, the trial court found the record supported the partial awarded attorney fees requested by Andrea. Drew filed a notice of appeal from the May 28, 2020 judgment. This court consolidated the two appeals by judgment entry dated June 9, 2020.

## II.  ASSIGNMENTS OF ERROR

{¶ 10}  Drew assigns the following eight assignments of error for our review:

> [I.] THE TRIAL COURT ERRED IN RELEGATING THE BEST INTEREST STANDARD FOR MODIFICATION OF A SHARED PARENTING PLAN TO THAT OF A CONTRACT INTERPRETATION AND/OR ENFORCEMENT IN VIOLATION OF THE DOCTRINE OF *PARENS PATRIAE* AND R.C. § 3109.04.
>
> [II.] THE TRIAL COURT ERRED IN FAILING TO DETERMINE THE CHILD'S BEST INTEREST AT THE TIME OF TRIAL INSTEAD OF THE DATE OF THE ORIGINAL SHARED PARENTING PLAN.
>
> [III.] THE TRIAL COURT ERRED IN FINDING THAT MOTHER'S RELOCATION TO BE WITH EXTENDED FAMILY IS IN THE CHILD'S BEST INTEREST AND THAT MODIFYING THE SHARED PARENTING PLAN TO HAVE EQUAL PARENTING TIME WITH BOTH BIOLOGICAL PARENTS AND SIBLINGS IN THE CHILD'S CURRENT

SCHOOL DISTRICT WAS NOT IN THE CHILD'S BEST INTEREST.

[IV.] THE TRIAL COURT ERRED IN FAILING TO CONSIDER THAT THE FACTS AND CIRCUMSTANCES OF THE PARTIES HAD CHANGED SINCE THE ORIGINAL SHARED PARENTING PLAN WAS ADOPTED BY THE COURT.

[V.] THE TRIAL COURT ERRED IN FINDING APPELLANT UNCREDIBLE REGARDING HIS ABILITY OR INABILITY TO OBTAIN EMPLOYMENT IN CANTON, OHIO.

[VI.] THE TRIAL COURT ERRED IN FINDING THAT APPELLANT HAD AN INTENTION TO RELOCATE OUTSIDE THE STATE OF OHIO.

[VII.] THE TRIAL COURT ERRED IN RELYING ON INFORMATION THAT WERE FACTS NOT IN EVIDENCE OR TESTIMONY BUT WERE ONLY PRESENTED DURING ARGUMENT OF COUNSEL ON OBJECTIONS.

[VIII.] THE TRIAL COURT ERRED IN GRANTING AN ORDER OF ATTORNEY FEES PURSUANT TO R.C. § 3105.73(B) IN ITS MAY 28, 2020 DECISION AND ENTRY GRANTING 75(H) RELIEF.

## III. STANDARD OF REVIEW

{¶ 11} In ruling on objections to a magistrate's decision, the trial court must undertake an independent review of the matters objected to in order "to ascertain [whether] the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). *Ramsey v. Ramsey*, 10th Dist. No. 13AP-840, 2014-Ohio-1921, ¶ 16-17. Generally, when reviewing an appeal from a trial court's action on a magistrate's decision under Civ.R. 53(D)(4), an appellate court must determine whether the trial court abused its discretion in adopting or rejecting the decision. *Scott v. Nameth*, 10th Dist. No. 16AP-64, 2016-Ohio-5532, ¶ 10. Modifications to a shared parenting plan are likewise reviewed under an abuse of discretion standard. *Ramsey* at ¶ 43; *Bentley v. Harper*, 4th Dist. No. 18CA3858, 2019-Ohio-5420, ¶ 7. *See H.R. v. L.R.*, 181 Ohio App.3d 837, 2009-Ohio-1665, ¶ 13 (10th Dist.) (stating that a trial court "has broad discretion in determining the appropriate allocation of parental rights and responsibilities.") An abuse of discretion occurs when the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore*

*v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). An appellate court reviews questions of law de novo. *Scott* ¶ 10; *Ramsey* at ¶ 29.

## IV.  LEGAL ANALYSIS

{¶ 12}  Drew's eight assignments of error can be distilled into five main issues: (1) the trial court's reliance on the shared parenting plan, (2) certain factual findings and credibility determinations made by the trial court, (3) the trial court's reliance on evidence presented during the objection stage, (4) the trial court's ultimate best interest of the child determination, and (5) the trial court's award of attorney fees.

{¶ 13} Prior to addressing Drew's specific arguments in support of his assigned errors, we note the parties agree this appeal concerns a request to modify the terms of the parties' shared parenting plan and that R.C. 3109.04(E)(2)(b) governs this case. R.C. 3109.04(E)(2)(b) states:

> The court may modify the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree upon its own motion at any time if the court determines that the modifications are in the best interest of the children or upon the request of one or both of the parents under the decree. Modifications under this division may be made at any time. The court shall not make any modification to the plan under this division, unless the modification is in the best interest of the children.

*See Bruns v. Green*, ___Ohio St.3d.___, 2020-Ohio-4787, ¶ 11 (explaining that "[s]ubsection (E)(2)(b) authorizes the trial court—on its own initiative or at the request of one or both parents—to modify the terms of the shared-parenting plan when modification is found to be in the best interest of the child" and a change-in-circumstances determination is not required); *Ramsey* at ¶ 32-41 (finding the amount of parenting time to be a term of the shared parenting plan); *Myers v. Wade*, 10th Dist. No. 16AP-667, 2017-Ohio-8833, ¶ 12-13 (finding provisions relating to school placement are terms of a shared parenting plan). The parties further agree that the party to move for modification of the shared parenting plan, in this case Drew, had the burden of proving the modification of the shared parenting plan is in the child's best interest. *See Johnson-Wooldridge v. Wooldridge*, 10th Dist. No. 00AP-1073 (July 26, 2001) ("[T]he burden of proof is upon the party seeking modification.").

### A.  Reliance on the Shared Parenting Plan

{¶ 14}  Drew first asserts the trial court essentially made a legal error in "rel[ying] on principles of contract law and interpretation" and "reading principles of contract into R.C. § 3109.04 for purposes of modification of a shared parenting plan." (Drew's Brief at ix.) Drew believes the trial court violated the "doctrine of *parens patriae*" and "undermine[d] the best interest standard" by looking to what the parties' had previously agreed to in their shared parenting plan. (Drew's Brief at ix.)  Drew relatedly argues the trial court's "reliance" on the 2017 shared parenting plan, and the circumstances leading to that agreement, led the trial court to fail to adequately consider the current circumstances in evaluating the best interest of E.R. at the time of trial.  (Drew's Brief at ix.)

{¶ 15}  We disagree. As evidence of the trial court improperly emphasizing the shared parenting plan, Drew points to the trial court's recitation of Andrea's objection, which argued that the contractual nature of the shared parenting plan could not be unilaterally repudiated due to a change of heart.  But, contrary to Drew's position, the trial court did not determine Drew "was bound to [the shared parenting plan] without due consideration of whether such terms *continued* to be in the child's best interest as of the date of trial."  (Emphasis sic.) (Drew's Brief at 15.) The trial court stated repeatedly that the best interest standard applied, examined current circumstances under the statutory best interest of the child factors in R.C. 3109.04(F)(1) and (2), and concluded that "most importantly, [the shared parenting plan bargained for by the parties] still remains in [E.R.'s] best interest" and, again, "the Court finds that the Plan the Rankins carefully crafted, is still in [E.R.'s] best interest." (Apr. 13, 2020 Decision at 23.) Having reviewed Drew's contentions, we do not believe the trial court "relegate[d] the best interest standard * * * to that of a contract interpretation and/or enforcement," or "fail[ed] to determine the child's best interest at the time of trial." (Drew's Brief at vii, 14, 20.) Drew's assignments of error that suggest otherwise, including his first and second assignments of error, are overruled.

### B.  Factual Findings and Credibility Determinations

{¶ 16}  Drew next challenges certain factual findings and credibility determinations made by the trial court. Specifically, Drew argues the trial court erred by: finding him not credible regarding his inability to obtain same or similar employment in Canton; finding

that he "had an intention to relocate outside the State of Ohio"; and finding "nothing really changed from what was fully anticipated" in the shared parenting plan. (Drew's Brief at iii, 29.)

{¶ 17} "The trial court is the ultimate fact finder and issue resolver. It is well established that the trial court, as the fact finder, is free to believe all, part, or none of the testimony of each witness." *Hrabovsky v. Axley*, 5th Dist. No. 2013CA00156, 2014-Ohio-1168, ¶ 38. "[T]he weight given to a witness's testimony is an issue for the trier of fact; we do not substitute our judgment concerning credibility of the witness for that of the trial court." *Bentley v. Harper*, 4th Dist. No. 18CA3858, 2019-Ohio-5420, ¶ 16.

{¶ 18} In this case, the trial court was "not convinced that [Drew] cannot find employment in the Canton/Cleveland/Akron area." (Apr. 13, 2020 Decision at 20.) The trial court continued "[h]e simply does not want to move. * * * Finding new jobs may certainly not be easy, but is not impossible[.] * * * [Drew] agreed to and can move to Canton, and remain as active, or close to it, as he presently is. He may have to change employers. He may not. He said he would never live far from [E.R.]. * * * This comment concludes he can and will move." (Apr. 13, 2020 Decision at 20-22.)  The trial court thought "it is also important to note that the Court finds [Drew] did not make a good-faith effort to pursue employment in Canton so his claim that he cannot find meaningful employment in northeast Ohio is disingenuous." (Apr. 13, 2020 Decision at 22.)

{¶ 19} In coming to this determination, the trial court found the testimony of an employment expert discounted by the magistrate to be relevant, and noted the proffered testimony of the expert showed that jobs were available in northeastern Ohio for which Drew is qualified and would have paid the same or similar wages. The trial court also found that Drew's quick e-mail response to Andrea after her notice to relocate, stating she would "hear from his lawyer," showed Drew did not actually make a concerted effort to find employment in northeastern Ohio. (Apr. 13, 2020 Decision at 21.) The trial court's findings disputed by Drew here are supported by the record, and we do not find the trial court's determination regarding Drew's purported inability to find work in northeastern Ohio to be in error or otherwise inappropriate within the context of an R.C. 3109.04(F) analysis. *See* R.C. 3109.04(F)(1) and (2) (stating the court is "not limited to" the listed factors). We further note that the trial court's discretion as a fact finder is not altered where the trial is

assigned to a magistrate. *Williamson v. Williamson*, 7th Dist. No. 16 JE 0022, 2017-Ohio-1082, ¶ 20-21 ("the fact that the magistrate and not the trial court heard the witnesses testify does not change our review"), citing *Davis v. Davis*, 5th Dist. No. 2016 AP 05 0031, 2016-Ohio-7205, ¶ 33-34. Drew's fifth assignment of error is overruled.

{¶ 20} We likewise find no error in the trial court's treatment of Drew's contemplation of moving outside of Ohio. While Drew argues here that the trial court found he "had an intention to relocate outside the State of Ohio," the trial court's finding was not so pointed. (Drew's Brief at 32.) The trial court found that Drew "is considering a move to North Carolina to help care for his critically ill mother" and found that "there is a potential he could move to North Carolina." (Apr. 13, 2020 Decision at 16-17.) This finding was based on Drew's testimony in response to being asked whether he had any plans to move to North Carolina. He testified, "I don't know at this time" and "[t]oday, no * * * I feel like I have just as much right to be near my family as Andrea has to be near hers." He also testified that "at the moment" he had not looked at job opportunities in North Carolina, but he did "plan to at least consider it, to look" and "to at least do some due diligence and look into it." (Tr. Vol. I at 674-75.) Competent, credible evidence supported the trial court's finding here, and we again find no issue with the trial court's consideration of the potential move within the parameters of the R.C. 3109.04(F) analysis. *See* R.C. 3109.04(F)(1) and (2) (stating the court is "not limited to" the listed factors). Drew's sixth assignment of error is overruled.

{¶ 21} Lastly, we do not attribute the same meaning to the trial court's comment "nothing really changed from what was fully anticipated" as does Drew. (Apr. 13, 2020 Decision at 23; Drew's Brief at 29.) Drew cites to evidence of the changes experienced by the parties—marriages, pregnancies, home purchases, employment—and implies the trial court did not consider these changes in making its best interest of the child determination. Contrary to Drew's position, these changes were acknowledged and discussed by the trial court in its decision. Rather than the trial court literally meaning no changes at all had occurred to the parties that factor into the best interest analysis, we find in context of the decision that the trial court considered the changes that occurred in the parties' lives, but believed such changes did not negate the parameters of the parties' agreed shared parenting plan or otherwise render it no longer in E.R.'s best interest. We find no error in the trial court's statement. Drew's fourth assignment of error is overruled.

### C.  Reliance on Evidence Presented in the Objection Stage

{¶ 22}  Drew contends the trial court erred in "relying on additional information that was presented through argument of counsel instead of sworn testimony or other evidence in making its decision." (Drew's Brief at 33.) The additional information Drew believes the trial court errantly relied upon pertains to E.R.'s friend (purportedly) no longer attending the same preschool as E.R.  Andrea counters that, in his memorandum contra Andrea's objection, Drew acknowledged that E.R.'s friend left the preschool. Moreover, Andrea contends that even if the court erred by referencing information that was not formally admitted as evidence, the trial court did not rely on that information in making its decision and it was otherwise harmless error. We agree with Andrea.

{¶ 23}  Before ruling on objections to a magistrate's decision, a trial "court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate."  Civ.R. 53(D)(4)(d). "Civ.R. 53(D)(4)(d) gives the trial court broad discretion in deciding whether to hear additional evidence." *Maddox v. Maddox*, 1st Dist. No. C-140718, 2016-Ohio-2908, ¶ 14.

{¶ 24}  Here, Andrea in objecting to the magistrate's decision, requested the court consider under Civ.R. 53(D)(4)(d) additional evidence, including the friend leaving E.R.'s preschool. Other than oral argument on the objection, no hearing was held. In the section of its decision discussing E.R.'s adjustment to home, school, and community, the trial court stated that E.R. had grown "quite attached" to a peer at her preschool, and E.R. and the preschool friend have frequent playdates. (Apr. 13, 2020 Decision at 14.) The trial court continued "[h]owever [the friend] does not live in the Hilliard School District, so it was not anticipated the [two children] would attend kindergarten together. (At the Objection hearing level, it was learned that [the friend] no longer attends [the preschool].)." (Apr. 13, 2020 Decision at 14.) The trial court stated "[E.R.] seems to be as connected to the community as her age allows. * * * Despite these activities, the Court notes this is a three-year-old, not a teenager in high school who might have strong feelings about moving from lifelong friends or high school teammates." (Apr. 13, 2020 Decision at 14-15.)

{¶ 25}  In our view, the trial court's mention of E.R.'s friend no longer attending the same preschool as E.R. does not demand reversal. After the trial court mentioned E.R.'s

friend leaving her preschool, the trial court nonetheless still acknowledged E.R.'s attachment to the friend, but tempered the weight of that attachment to fit the context of friendships between three-year-olds. Drew does not argue against the trial court's suggestion that friendships between three-year-olds do not yield the same strong feelings as older children and does not dispute that the friend would not have attended E.R.'s kindergarten in Hilliard. Because the trial court did not rely on this additional evidence and, regardless, because the information about E.R.'s friend leaving her preschool was not prejudicial, we overrule Drew's seventh assignment of error.

## D. Best Interest of the Child Determination

{¶ 26} Drew contends the trial court erred in "finding that [Andrea's] relocation to be with extended family is in [E.R.'s] best interest and that modifying the shared parenting plan to have equal parenting time with both biological parents and siblings in [E.R.'s] current school district was not in [E.R.'s] best interest." (Drew's Brief at vii, 20-21.) We disagree.

{¶ 27} "A trial court must follow R.C. 3109.04 when deciding child custody matters but it has broad discretion when determining what is the appropriate allocation of parental rights and responsibilities." *Pallone v. Pallone*, 10th Dist. No. 17AP-409, 2017-Ohio-9324, ¶ 36, citing *Parker v. Parker*, 10th Dist. No. 05AP-1171, 2006-Ohio-4110, ¶ 23. "The legislature, through R.C. 3109.04, concerning the allocation of parental rights and responsibilities for the care of children, or "shared parenting," seems to instruct that once allocation is established, whether by decree (declaring that shared parenting shall occur) or according to a plan (implementing the decree or order), changing it is presumed to be ill-advised unless it can be established foremost that the change will be in the best interest of the children." *Myers v. Wade*, 10th Dist. No. 16AP-667, 2017-Ohio-8833, ¶ 10. *See* R.C. 3109.04(E)(2)(b).

{¶ 28} R.C. 3109.04(F)(1) contains a non-exclusive list of factors for the trial court to consider in determining whether a modification to a shared parenting arrangement is in the best interests of the child. This list includes:

> (a) The wishes of the child's parents regarding the child's care;
>
> (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and

responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully

denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

Furthermore, "[i]n determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, the factors enumerated in section 3119.23 of the Revised Code, and all of the following factors:"

(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;
(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

R.C. 3109.04(F)(2).

{¶ 29} Drew acknowledges the trial court correctly identified and reviewed all factors contained in R.C. 3109.04(F)(1) and (2) but contends the trial court allowed Andrea's interest to "overshadow the best interest of the child analysis" and "failed to give appropriate weight to the relationship between [Drew] and [E.R.] instead of the proximity of [Andrea's] extended family," especially given Andrea could and does see her family frequently during her parenting time and that such a move would "uproot" the lives of all involved. (Drew's Brief at x, 28.)  He also believes the trial court "failed to acknowledge that both parents believed that it would be in [E.R.'s] best interest to have equal time with both parents and that [Andrea] would not move to Canton, Ohio if the Shared Parenting Plan was modified." (Drew's Brief at x.) He argues the trial court erred in relying on its credibility determination regarding his inability to find employment in the Canton area, failed to address the fact that relocation would negatively impact E.R.'s ability to participate in

extracurricular activities, and generally gave too much weight to the shared parenting plan particularly given the substantial changes that have occurred since the plan.

{¶ 30} In support of his arguments, Drew cites to *Rodkey v. Rodkey*, 8th Dist. No. 86884, 2006-Ohio-4373, ¶ 29, as an analogous case that supports his view that relocation is not in the best interest of E.R. In *Rodkey*, the shared parenting plan specified that neither parent could remove the child from Cuyahoga County or an adjacent county without first obtaining written permission from the other parent or a court order. The mother filed a motion to remove the child from Cuyahoga County to the Youngstown area. A magistrate entered a decision that, in pertinent part, denied the mother's motion to relocate with the child, who, at that time, was in second grade in the mother's school district. The trial court adopted the magistrate's decision, the mother appealed, and the appellate court affirmed. Noting "relocation of a child is a substantial factor in any case involving shared parenting, particularly where a greater distance is placed between the parties," the appellate court found the record of that case did not support a finding that relocation would be in the child's best interest. *Id.*

{¶ 31} *Rodkey* does not demand reversal in this case. The record in *Rodkey* included an older, elementary-age child, a father that had a significantly more flexible schedule than the mother (that ultimately led to the appellate court to designate him as the residential parent for school purposes), and an expert's opinion that relocation would have a deleterious effect on the father-child relationship. The record in *Rodkey* also did not include any evidence that the father had originally intended to relocate along with the mother.

{¶ 32} The record evidence in the case at hand supported the trial court's determination that retaining the relocation related provisions of the shared parenting plan remained in E.R.'s best interest. *Pallone* at ¶ 37, quoting *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus ("Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."). The trial court found it is in E.R.'s best interest to allow relocation so she can be surrounded by extended family and in a good school system. Drew frames the trial court opinion as placing more weight on E.R.'s proximity to extended family than to her father and sibling. Drew's

argument in this respect in large part depends on equating Andrea's relocation to the Canton area as a significant physical barrier between him and E.R. that reduces his parenting time and involvement, which is not in E.R.'s best interest.

{¶ 33} However, this argument misses the trial court's opinion that distance really should not be an issue since Drew "can and will move" based on record evidence. (Apr. 13, 2020 Decision at 22.) Drew previously agreed to move to the Canton area to be near E.R. if Andrea exercised her option to relocate, he testified he would never be far from E.R., and jobs are available to Drew in the Canton area. As previously discussed, the trial court found Drew's statements on employment to be disingenuous, and this finding is supported by the record. As acknowledged by Drew in his own argument, it is the best interest of E.R. that is dispositive in this analysis, not necessarily the convenience or inconvenience to other parties.

{¶ 34} The trial court likewise found that, even if Drew chooses to not relocate to be near E.R., the permissive relocation provisions in the shared parenting plan continue to be in E.R.'s best interest. Drew previously agreed with this position, including a specific schedule in a Canton/Columbus parenting scenario. Drew now argues against it. We acknowledge the significance of the arrival of E.R.'s new siblings, in particular, since Drew's agreement to the shared parenting plan. However, as the trial court noted, E.R. will still have frequent and significant contact with the family on Drew's side and we note the trial court modified the shared parenting plan to give Drew more time than what he previously believed to be in E.R.'s best interest in this scenario. Drew's testimony that he would look into a potential move outside of Ohio did not strengthen his position that Andrea should remain with E.R. in central Ohio.

{¶ 35} Overall, the trial court reviewed the evidence and the best interest factors and determined that it is in E.R.'s best interest that the relocation and related school provisions remain as originally agreed to by the parties in their shared parenting plan, with a modification for more parenting time should Drew choose to remain in the Columbus area. That determination is supported by the weight of the evidence. Based on the foregoing, we cannot say the trial court acted unreasonably, arbitrarily or unconscionably in refusing to modify the shared parenting plan to remove Andrea's ability to relocate to the Canton area. Accordingly, we overrule Drew's third assignment of error.

### E. Attorney Fees

{¶ 36} Finally, Drew contends, specific to the trial court's May 28, 2020 decision and entry, that the trial court erred in granting an order of attorney fees pursuant to R.C. 3105.73(B), which provides:

> In any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets.

An award of attorney fees in a domestic relations action is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Colombo v. Chesser*, 10th Dist. No. 17AP-278, 2018-Ohio-1477, ¶ 15, citing *Settele v. Settele*, 10th Dist. No. 14AP-818, 2015-Ohio-3746, ¶ 51. A trial court is not required to receive expert testimony in order to award attorney fees under R.C. 3105.73. *Long v. Long*, 10th Dist. No. 11AP-510, 2012-Ohio-6254, ¶ 20. Instead, the trial court "may rely on its own knowledge and experience to determine the reasonableness of the amount claimed." *Id.*

{¶ 37} In this case, following the trial court's decision on the relocation provisions of the parties' shared parenting plan, Andrea asked for $4,962.50 to cover the amount of attorney fees she incurred defending against five motions filed by Drew. Within a combined memorandum in opposition to Drew's second Civ.R. 75 motion and request for attorney fees, she argued:

> [I]n the last eight weeks alone, [Drew] filed five separate motions requesting adjustment to [the] parenting time schedule. On March 18, Drew requested equal parenting time via motion to extend an interim order; it was denied. On April 1, Drew requested equal parenting time via a 2nd motion to extend an interim order; it was denied. On April 14, Drew requested equal parenting time via motion for stay under Civ.R. 75(H); it was denied; On April 21, Drew sought to maintain the equal parenting time schedule via motion for emergency temporary restraining order; it was denied. And now, in his fifth and latest motion filed April 24, Drew against requests equal parenting time via Civ.R 75(H).

> With each new filing, Drew simply slaps a fresh coat of lipstick onto the pig. The relief requested is always same - - equal parenting time; an outcome specifically rejected by the Court following trial.
>
> Drew acknowledges such in his affidavit:
>
> *despite the minor child not being of school age, the court did not find it pertinent to order an equal parenting time schedule even if [Drew] could not relocate.*
>
> Drew has not petitioned for relief under Civ.R. 59 or 60 and he has identified no statutory authority which permits *alternate* relief to be awarded on an expedited basis, without evidentiary hearing, during the pendency of an appeal. Drew is simply asking this Court to reconsider and rewrite its decision. The Rules provide for no such relief.

(Emphasis sic.) (May 18, 2020 Memo. in Opp. at 3.) Andrea continued that Drew's requests were unsupported by law, mislead the court, and were an attempt to "delay[,] obfuscate, compound, and confuse." (May 18, 2020 Memo. in Opp. at 5.) She included an affidavit attesting to the amount of fees incurred.

{¶ 38} The trial court in a May 28, 2020 decision found the record supported an award of attorney fees under R.C. 3105.73(B). The trial court found "Andrea's counsel is an experienced domestic relations attorney" and, "after consideration of the specific facts herein, and the litigations history of the past month," the trial court concluded that an award in the amount of $2,000 to Andrea is "reasonable and appropriate." (May 28, 2020 Decision at 5, citing *Ward v. Ward*, 10th Dist. No. 85AP-61 (June 18, 1985), the trial court noted it may use its own knowledge and experience to determine the reasonableness of the amount claimed.)

{¶ 39} Drew argues the trial court erred by ordering him to pay the attorney fees award without providing specific findings justifying such an award of fees: "There are no findings as what equitable considerations the court found to justify the award of attorney fees or for what motions, specifically, the fees were awarded for defending against or why an award was justifiable." (Drew's Brief at 35.) Drew asserts that in filing his motions, he "was utilizing the available legal remedies as an attempt to preserve the status quo while the appeal was pending to avoid the potential for additional upheaval of the family," and

"the trial court's determination that such conduct justifies an award of attorney fees is inequitable." (Drew's Brief at 36.) Drew additionally asserts "there was no motion filed requesting attorney fees." (Drew's Reply Brief at 16.)

{¶ 40} Andrea responds that during a five-week span Drew filed five separate motions with the main aim of gaining equal parenting time, which the trial court had already rejected, and trying to convince the trial court to rewrite its decision. Andrea notes that the trial court awarded only 40 percent of the attorney fees she incurred defending against the five motions.

{¶ 41} At the outset, we note that Drew has not provided this court with any legal authority to support his argument that a trial court is obligated to state the specific basis for its award of attorney fees under R.C. 3105.73(B), or that a request for attorney fees must be made by separate motion. As a result, we find Drew has not demonstrated error on appeal. *J.W. v. D.W.*, 10th Dist. No. 19AP-52, 2019-Ohio-4018, ¶ 55, citing *State v. Smith*, 9th Dist. No. 15AP0001n , 2017-Ohio-359, ¶ 22 (noting it is not the duty of an appellate court to create an argument on an appellant's behalf). *Abraham v. BP Exploration & Oil, Inc.*, 149 Ohio App.3d 471, 479 (10th Dist.2002) ("Pursuant to App.R. 16(A)(7), an appellant must present their contentions with respect to each assignment of error presented for review and the reasons in support of the contentions with citations to the authorities, statutes, and parts of the record on which they rely.").

{¶ 42} Moreover, after considering the record in this case, we cannot say the trial court abused its discretion in awarding Andrea $2,000 toward her attorney fees. The trial court could have reasonably concluded that Drew's filing of multiple motions concerning similar issues caused Andrea to unnecessarily incur attorney fees. The court had sufficient evidence of Drew's conduct before it, taken together with its own observations and experience, on which to conclude that a partial award of attorney fees was reasonable in this case. *See Ramsey* at ¶ 52 (noting that a party's behavior in filing repetitive motions and "extra-curricular activities" may serve as the basis for attorney fees under R.C. 3105.73(B)).

{¶ 43} Accordingly, we overrule Drew's eighth assignment of error.

## V. CONCLUSION

{¶ 44} Having overruled Drew's eight assignments of error, we affirm the judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

*Judgments affirmed.*

DORRIAN, P.J., and MENTEL, J., concur.

_____

BROGAN, J., retired, formerly of the Second Appellate District, Assigned to active duty under authority of the Ohio Constitution, Article IV, Section 6(C).